[No. S004764. Crim. No. 26404. Dec. 7, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
MIGUEL ANGEL BACIGALUPO, Defendant and Appellant.

462

## COUNSEL

Cliff Gardner and Melissa Johnson, under appointments by the Supreme Court, for Defendant and Appellant.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Richard B. Iglehart and George Williamson, Chief Assistant Attorneys General, John H. Sugiyama and Ronald A. Bass, Assistant Attorneys General, Ronald S. Matthias, Christopher J. Wei and Dane R. Gillette, Deputy Attorneys General, for Plaintiff and Respondent.

Kent S. Scheidegger as Amicus Curiae on behalf of Plaintiff and Respondent.

## OPINION

**KENNARD, J.—** ■ The Eighth Amendment to the United States Constitution, which prohibits the infliction of "cruel and unusual punishments," imposes various restrictions on the use of the death penalty as a punishment for crime. One such restriction is that any legislative scheme defining criminal conduct for which death is the prescribed penalty must include some narrowing principle that channels jury discretion and provides a principled way to distinguish those cases in which the death penalty is imposed from the many cases in which it is not. A death-eligibility criterion that fails to meet this standard is deemed impermissibly vague under the Eighth Amendment. (*Maynard* v. *Cartwright* (1988) 486 U.S. 356 [100 L.Ed.2d 372, 108 S.Ct. 1853]; *Godfrey* v. *Georgia* (1980) 446 U.S. 420 [64 L.Ed.2d 398, 100 S.Ct. 1759].)

California's death penalty law contains two types of statutory criteria: special circumstances, which define the conduct that renders a defendant eligible for the death penalty; and sentence selection factors, which assist the trier of fact in deciding whether a defendant already found to be eligible for the death penalty should actually be sentenced to death.

The issue we face in this case is whether the Eighth Amendment vagueness standard described above governs the validity of the second of the two types of statutory factors in the California death penalty scheme, those used to determine, not eligibility for the death penalty, but whether a death-eligible defendant shall receive the penalty of death or the alternative penalty of life imprisonment without possibility of parole.

After an extensive review of both the constitutional requirements that the United States Supreme Court has established for the death penalty and the pertinent provisions of our state's death penalty law, we reach these conclusions: (1) our law's penalty selection factors, which are not used to determine death eligibility, are not subject to the Eighth Amendment standard used to evaluate death eligibility criteria; and (2) when evaluated against the appropriate standard, the particular penalty selection factors that defendant challenges do not violate the Eighth Amendment. Consistent with these conclusions, we shall reaffirm the judgment of death.

I

Our opinion in *People* v. *Bacigalupo* (1991) 1 Cal.4th 103 [2 Cal.Rptr.2d 335, 820 P.2d 559] (*Bacigalupo I*) contains a detailed summary of the procedural history and the facts in this case. For present purposes, only the following facts are pertinent.

At the guilt phase of defendant's capital trial, the jury found him guilty of two counts of first degree murder (Pen. Code, §§ 187, 189)[1], and found to be true the special circumstance allegations of robbery-murder and multiple murder.[2] At the subsequent penalty phase, the same jury returned a verdict of death.

On his automatic appeal from the judgment of death (§ 1239, subd. (b)), defendant challenged that portion of the death penalty law requiring a penalty phase jury, for the purpose of choosing between a sentence of life without possibility of parole and a sentence of death, to consider "[t]he presence or absence of criminal activity by the defendant which involved the

---

[1]Unless otherwise indicated, further statutory references are to the Penal Code.

[2]California's death penalty law defines the special circumstance of robbery-murder as follows: "The murder was committed while the defendant was engaged in or was an accomplice in the commission of, attempted commission of, or the immediate flight after committing or attempting to commit the following felon[y]: [¶] (i) Robbery in violation of Section 211 . . . ." (§ 190.2, subd. (a)(17)(i).)

The special circumstance of multiple murder is defined this way: "The defendant has in this proceeding been convicted of more than one offense of murder in the first or second degree." (§ 190.2, subd. (a)(3).)

use or attempted use of force or violence or the express or implied threat to use force or violence." (§ 190.3, factor (b) [hereafter also referred to as factor (b)].) Defendant argued that the terms "criminal" and "violence" in factor (b) are impermissibly vague under the Eighth Amendment because they fail to provide a principled basis for distinguishing between those who deserve the death penalty and those who do not.

We addressed defendant's contention in *Bacigalupo I*, *supra*, 1 Cal.4th 103, 148, pointing out that defendant was urging us to undertake a form of "vagueness" evaluation that the United States Supreme Court had applied "only to statutes that govern 'those circumstances that make a criminal defendant "eligible" for the death penalty.'" We explained that under California's death penalty scheme, the jury's determination that a defendant is "eligible" for the death penalty is made during the *guilt* phase of the trial when the jury finds the existence of one or more of the statutory special circumstances. The challenged factor (b), by contrast, is used only for the purpose of sentence selection at the *penalty* phase, when juries in capital cases select from the class of persons found eligible for the death penalty those who will actually be sentenced to death. Accordingly, in *Bacigalupo I* we declined to undertake the "vagueness" evaluation defendant had urged. (*Bacigalupo I*, *supra*, at p. 148.)

After our affirmance of the judgment of death in *Bacigalupo I*, *supra*, 1 Cal.4th 103, defendant petitioned the United States Supreme Court for a writ of certiorari. In his petition, defendant argued that the high court's decision in *Stringer* v. *Black* (1992) 503 U.S. __ [117 L.Ed.2d 367, 112 S.Ct. 1130] (issued shortly after *Bacigalupo I*) "made it very clear" that the Eighth Amendment "vagueness" evaluation applied not only to statutes governing the determination of "death eligibility," but also to sentencing considerations—such as factor (b) of section 190.3 in California's capital scheme— that play no role in that determination. The United States Supreme Court granted defendant's petition and remanded the matter to this court for reconsideration in light of *Stringer*.

Upon remand, this court solicited supplemental briefing from the parties and heard oral argument. At oral argument, defense counsel described in some detail how, in his view, the Eighth Amendment "vagueness" evaluation should be applied to the section 190.3 sentence selection factors. According to counsel, the section 190.3 factors that could "weigh" in favor of a penalty of death must provide some "narrowing" principle to guide sentencer discretion so as to avoid arbitrariness in the selection and imposition of the death penalty. Further, defense counsel argued, the section 190.3 factors must be sufficiently objective that a reviewing court can determine why a sentence of death was imposed in a particular case.

To understand the concepts underlying defendant's argument, we must examine the guiding principles of Eighth Amendment jurisprudence as applied by the United States Supreme Court in death penalty cases it decided before *Stringer* v. *Black, supra,* 503 U.S. ___ [117 L.Ed.2d 367, 112 S.Ct. 1130].

## II

The United States Supreme Court's capital punishment jurisprudence rests on the principle that " ' "the infliction of a sentence of death under legal systems that permit this unique penalty to be . . . wantonly and . . . freakishly imposed" ' " violates the Eighth and Fourteenth Amendments to the federal Constitution. (*Lewis* v. *Jeffers* (1990) 497 U.S. 764, 774 [111 L.Ed.2d 606, 618, 110 S.Ct. 3092, 3099]; accord, *Arave* v. *Creech* (1993) ___ U.S. ___ [123 L.Ed.2d 188, 193, 113 S.Ct. 1534, 1536].)

The high court has drawn a distinction between two aspects of capital sentencing: "narrowing" and "selection." "Narrowing" pertains to a state's "legislative definition" of the circumstances that place a defendant within the class of persons eligible for the death penalty. (*Zant* v. *Stephens* (1983) 462 U.S. 862, 878 [77 L.Ed.2d 235, 250-251, 103 S.Ct. 2733]; *Godfrey* v. *Georgia, supra,* 446 U.S. at p. 428 [64 L.Ed.2d at p. 406].) To comport with the requirements of the Eighth Amendment, the legislative definition of a state's capital punishment scheme that serves the requisite "narrowing" function must "circumscribe the class of persons eligible for the death penalty." (*Zant* v. *Stephens, supra,* 462 U.S. 862, 878 [77 L.Ed.2d 235, 251].) Additionally, it must afford some objective basis for distinguishing a case in which the death penalty has been imposed from the many cases in which it has not. (*Godfrey* v. *Georgia, supra,* 446 U.S. at p. 433 [64 L.Ed.2d at p. 409].) A legislative definition lacking "some narrowing principle" to limit the class of persons eligible for the death penalty and having no objective basis for appellate review is deemed to be impermissibly vague under the Eighth Amendment. (*Maynard* v. *Cartwright, supra,* 486 U.S. at p. 361 [100 L.Ed.2d at p. 380]; *Godfrey* v. *Georgia, supra,* 446 U.S. at p. 428 [64 L.Ed.2d at p. 406].)

Typically, death penalty statutes satisfy the "narrowing function" in one of two ways. (*Lowenfield* v. *Phelps* (1988) 484 U.S. 231, 246 [98 L.Ed.2d 568, 582, 108 S.Ct. 546].) Some states narrowly define capital offenses so that the jury's finding of guilt reflects the "narrowing function." (*Ibid.* [the requisite narrowing under the Louisiana death penalty statute at issue in *Lowenfield* was provided by the jury's guilt verdicts on three counts of murder under the statutory provision that the defendant had " 'a specific intent to kill or to

inflict great bodily harm upon more than one person.' "].) Other states define capital offenses more broadly and provide for narrowing "by jury findings of aggravating circumstances at the penalty phase." (*Ibid.* [citing the Georgia capital scheme as providing the required "narrowing" by jury findings at the penalty phase of the existence of one or more alleged "aggravating circumstances"].)

Once a capital defendant is determined to be within the narrowed class of death-eligible defendants, the sentencing body must decide whether to impose a sentence of death or of life imprisonment. Of importance in this penalty selection process "is an *individualized* determination on the basis of the character of the individual and the circumstances of the crime." (*Zant* v. *Stephens, supra,* 462 U.S. at p. 879 [77 L.Ed.2d at p. 251], original italics.) Thus, consideration by the sentencer of any mitigating aspect of " 'the character and record of the individual offender and the circumstances of the particular offense' " is " 'a constitutionally indispensable part of the process of inflicting the penalty of death.' " (*Johnson* v. *Texas* (1993) __ U.S. __ [125 L.Ed.2d 290, 301, 113 S.Ct. 2658, 2665]; *Eddings* v. *Oklahoma* (1982) 455 U.S. 104 [71 L.Ed.2d 1, 102 S.Ct. 869]; *Lockett* v. *Ohio* (1978) 438 U.S. 586 [57 L.Ed.2d 973, 98 S.Ct. 2954].)

If a capital defendant comes within "the legislatively defined category of persons eligible for the death penalty," the sentencer can consider "a myriad of factors" in selecting the appropriate punishment. (*California* v. *Ramos* (1983) 463 U.S. 992, 1008 [77 L.Ed.2d 1171, 1185, 103 S.Ct. 3446].) Moreover, the United States Supreme Court has generally deferred to a state's choice of the substantive factors that are relevant to the penalty determination. (*Payne* v. *Tennessee* (1991) 501 U.S. 808 [115 L.Ed.2d 720, 735, 111 S.Ct. 2597, 2608]; *California* v. *Ramos, supra,* 463 U.S. at p. 1001 [77 L.Ed.2d at p. 1180].)

Thus, in the penalty selection process of a capital case, the legal entity (jury or judge) that is to decide what penalty to impose may consider evidence of the "general type long considered by sentencing authorities" in other criminal cases, such as victim impact evidence (*Payne* v. *Tennessee, supra,* 501 U.S. at p. __ [115 L.Ed.2d at p. 735, 111 S.Ct. at p. 2608]), the defendant's criminal record (see *Barclay* v. *Florida* (1983) 463 U.S. 939, 956 [77 L.Ed.2d 1134, 1147-1148, 103 S.Ct. 3418]), or other aggravating evidence about the defendant (*Zant* v. *Stephens, supra,* 462 U.S. at p. 875 [77 L.Ed.2d at p. 248]). As long as a state's capital sentencing scheme "narrows the class of death-eligible murderers" and then during sentence selection permits the exercise of discretion and does not limit consideration of evidence in mitigation, the United States Supreme Court has stated that the

Eighth Amendment "requires no more." (*Lowenfield* v. *Phelps, supra,* 484 U.S. at p. 246 [98 L.Ed.2d at p. 583]; accord, *California* v. *Brown* (1987) 479 U.S. 538, 541 [93 L.Ed.2d 934, 939-940, 107 S.Ct. 837].) Indeed, the high court found no constitutional defect in a capital sentencing scheme that in the sentence selection process afforded the sentencer "unbridled discretion" in deciding what sentence to impose on a defendant within the narrowed class of persons eligible for the death penalty. (*Zant* v. *Stephens, supra,* 462 U.S. at p. 875 [77 L.Ed.2d at p. 248].)

The distinction the high court has drawn between the "narrowing" and "selection" aspects of a capital sentencing scheme underlay our conclusion in *Bacigalupo I* that the section 190.3 factors of California's capital penalty statute, which pertain only to sentence selection and play no role in narrowing the class of murderers eligible for the death penalty, were not subject to the Eighth Amendment standard used to evaluate death eligibility criteria. (*Bacigalupo I, supra,* 1 Cal.4th at p. 148.) To explain why we remain with that conclusion, we now turn to the specific provisions of our 1978 death penalty law.

### III

Under the 1978 California capital scheme involved here, a case for which the Legislature has prescribed the death penalty is tried in separate phases. (§ 190.1.) At the initial phase of the trial, the trier of fact decides the issue of defendant's guilt or innocence of first degree murder. If the defendant is found guilty, a determination must be made as to the existence of any "special circumstances." (§§ 190.1, 190.2.) If the trier of fact finds at least one alleged special circumstance to be true, the case proceeds to the "penalty" phase of the trial.

With respect to the role of the special circumstances tried during the guilt phase of the trial, California's 1978 death penalty statute is essentially identical to California's 1977 death penalty law the United States Supreme Court upheld in *Pulley* v. *Harris* (1984) 465 U.S. 37 [79 L.Ed.2d 29, 184 S.Ct. 871], in that it "requir[es] the jury to find at least one special circumstance beyond a reasonable doubt," thereby "limit[ing] the death sentence to a small subclass" of murders. (*Id.* at p. 53 [79 L.Ed.2d at p. 42].) ■ In California, the special circumstances serve to " 'guide' " and " 'channel' " jury discretion "by strictly confining the class of offenders eligible for the death penalty." (*People* v. *Brown* (1985) 40 Cal.3d 512, 539-540 [220 Cal.Rptr. 637, 709 P.2d 440], revd. on other grounds *sub nom. California* v. *Brown, supra,* 479 U.S. 538.) As the criteria in the California capital scheme that define the class of murders for which death is a potential penalty, the

special circumstances set forth in section 190.2 must comport with Eighth Amendment requirements by providing not only clear and objective standards for channeling jury discretion, but also detailed and specific guidance, thus making the process for imposing a death sentence " 'rationally reviewable.' " (*Godfrey* v. *Georgia, supra,* 446 U.S. at p. 428 [64 L.Ed.2d at p. 406].)

Under our death penalty law, therefore, the section 190.2 "special circumstances" perform the same constitutionally required "narrowing" function as the "aggravating circumstances" or "aggravating factors" that some of the other states use in their capital sentencing statutes. (See *Gregg* v. *Georgia* (1976) 428 U.S. 153, 193, and fn. 44 [49 L.Ed.2d 859, 886, 96 S.Ct. 2909].) In those states that use aggravating factors or aggravating circumstances as criteria to circumscribe the class of murderers eligible for the death penalty, the truth of the allegations of aggravating factors or aggravating circumstances is determined in the second or penalty phase of the trial. (See Ariz. Rev. Stat. Ann. § 13-703 (1993); Fla. Stat. § 921.141(1), (2) & (3) (1992); Ga. Code Ann. §§ 17-10-2(c), 17-10-30, 17-10-31 (1993).) By contrast, in California the existence of the "special circumstances" that render a defendant charged with capital murder eligible for the death penalty is determined at the first or "guilt" phase of the trial, together with the issue of the defendant's guilt or innocence of first degree murder. (§ 190.4, subd. (a) [Upon a finding by the trier of fact that the defendant is guilty of first degree murder, "the trier of fact shall also make a special finding on the truth of each alleged special circumstance[,]" which must be proved beyond a reasonable doubt.].) In this respect, California's capital scheme is unique.

When, under the 1978 California death penalty law at issue here, the trier of fact during the guilt phase of the trial finds at least one special circumstance allegation to be true, the case proceeds to the "penalty" or sentencing phase of the trial. (§ 190.3; see *Pulley* v. *Harris, supra,* 465 U.S. at p. 51 [79 L.Ed.2d at pp. 40-41] [discussing this aspect of the 1977 law].) At this stage in the proceedings, "[a]dditional evidence may be offered and the jury is given a list of relevant factors" from section 190.3 to guide it in deciding whether to impose a sentence of life without the possibility of parole or a sentence of death. (*Pulley* v. *Harris, supra,* 465 U.S. at p. 51 [79 L.Ed.2d at p. 41].) ■ The sole purpose of the penalty phase is to select the punishment for a defendant who has been found to be within the narrowed class of murderers for whom death would be an appropriate penalty. (*People* v. *Brown, supra,* 40 Cal.3d at pp. 539-540.) As we explained in *Brown*: " '[W]hat is important [at the penalty phase] . . . is an *individualized* determination on the basis of the character of the individual and the circumstances of the crime.' (*Zant* [v. *Stephens*], *supra,* 462 U.S. at p. 879 [77

L.Ed.2d at p. 251].) . . . It is not simply a finding of facts which resolves the penalty decision, ' "but . . . the jury's moral assessment of those facts as they reflect on whether [the] defendant should be put to death . . . ." ' " (*People* v. *Brown, supra,* 40 Cal.3d at p. 540, italics in original.)

Section 190.3 of California's capital scheme lists the various factors that the sentencer is "to consider, take into account and be guided by" in deciding penalty. With the exception of section 190.3's factor (k), which invites consideration of any "circumstance which extenuates the gravity of the crime even though it is not a legal excuse for the crime," the statute does not explicitly designate any of the factors as exclusively aggravating or exclusively mitigating. (*People* v. *Davenport* (1985) 41 Cal.3d 247, 289 [221 Cal.Rptr. 794, 710 P.2d 861].) It simply directs the trier of fact to aspects of the offense and the defendant's background that are relevant to the penalty determination.

For instance, factor (a) of section 190.3 directs the sentencing body to consider "[t]he circumstances of the crime of which the defendant was convicted in the present proceeding and the existence of any special circumstance found to be true . . . ." Factor (b) invites consideration of "[t]he presence or absence of criminal activity by the defendant which involved the use or attempted use of force or violence or the express or implied threat to use force or violence." Under factor (c), the sentencer can consider whether or not the defendant has suffered a prior conviction for a felony offense. And factors (d) through (j) refer to aspects of the circumstances of the capital offense that bear on a defendant's moral culpability in committing the offense, and that might in a particular case assist in the individualized determination of penalty.[3]

With respect to the sentencing body's consideration of evidence relevant to the sentencing factors set forth in section 190.3, the statute further provides that if "the aggravating circumstances outweigh the mitigating

---

[3]Factors (d) through (j) of section 190.3 direct the sentencer's attention to the following aspects of the circumstances of the capital crime: (d) whether or not the offense was committed while the defendant was under the influence of extreme mental or emotional disturbance; (e) whether or not the victim was a participant in the defendant's homicidal conduct or consented to the homicidal act; (f) whether or not the offense was committed under circumstances which the defendant reasonably believed to be a moral justification or extenuation for his or her conduct; (g) whether or not defendant acted under extreme duress or under the substantial domination of another person; (h) whether or not at the time of the offense the capacity of the defendant to appreciate the criminality of his or her conduct or to conform his or her conduct to the requirements of the law was impaired as a result of mental disease or defect, or the effects of intoxication; (i) the age of the defendant at the time of the crime; and (j) whether or not the defendant was an accomplice to the offense and his or her participation in the commission of the offense was relatively minor.

circumstances," the trier of fact "shall impose a sentence of death." This "weighing" is a process that by nature "is incapable of precise description." (*People* v. *Brown, supra,* 40 Cal.3d at p. 541.) ■ The "weighing" of aggravating against mitigating circumstances is "a mental balancing process," but not one that involves a "mechanical counting of factors" on either side of some imaginary scale, or "the arbitrary assignment of 'weights'" to any factor. (*Ibid.*) Rather, under our 1978 death penalty law, a juror faced with making the requisite "individualized" determination whether a defendant should be sentenced to life without parole or to death is entirely free to assign whatever moral or sympathetic value that juror deems appropriate to "each and all" of the relevant factors. (*Ibid.*) Moreover, in directing "that the jury 'shall' impose the death penalty if it finds that aggravating factors 'outweigh' mitigating," California's 1978 death penalty law does not require "any juror to vote for the death penalty unless . . . [that juror is convinced] that death is the appropriate penalty under all the circumstances." (*Ibid.*)

Thus, under California's 1978 death penalty scheme, the task that the jury performs at the penalty phase of the trial is "essentially normative." (*People* v. *Edelbacher* (1989) 47 Cal.3d 983, 1037 [254 Cal.Rptr. 586, 766 P.2d 1].) Representing the community at large, the jury applies "its own moral standards to the aggravating and mitigating evidence presented" and has the "ultimate responsibility for determining if death is the appropriate penalty for the particular offense and offender." (*Ibid.*)

The aspect of the 1978 death penalty law at issue in *Bacigalupo I* was defendant's challenge to factor (b) of section 190.3. At that time, defendant argued that the terms "criminal" and "violence" as used in factor-(b) were unconstitutionally vague under the Eighth Amendment. We declined to evaluate factor (b) for Eighth Amendment "vagueness" because we concluded that such an evaluation in the decisions of the United States Supreme Court had been applied exclusively to the "narrowing" aspect of a state's capital punishment scheme. (*Bacigalupo I, supra,* 1 Cal.4th at p. 148.) Before reviewing that conclusion here in light of the high court's recent decision in *Stringer* v. *Black, supra,* 503 U.S. __ [117 L.Ed.2d 367, 112 S.Ct. 1130], we turn briefly to *Zant* v. *Stephens, supra,* 462 U.S. 862, the case in which the high court first posed the issue it revisited in *Stringer*: whether, in a state that requires the sentencer in a capital case to weigh aggravating factors against mitigating factors, the consideration of a "vague" aggravating factor in the weighing process violates the Eighth Amendment.

IV

At issue in *Zant* v. *Stephens, supra,* 462 U.S. 862, was whether an "aggravating circumstance" that served the requisite "narrowing function" in

the State of Georgia's capital sentencing scheme, but failed to define the class of death-eligible murderers with sufficient precision to satisfy the Eighth Amendment, might adversely affect the sentence selection process. The impermissibly vague statutory aggravating circumstance in *Zant* —whether the offense of murder was committed by a person with "a substantial history of serious assaultive criminal convictions"—was one of three aggravating-circumstance allegations that the jury found to be true. (462 U.S. at pp. 866-867 [77 L.Ed.2d at p. 243].) Because the other two aggravating circumstances satisfied Eighth Amendment requirements, they provided the necessary "narrowing" to differentiate the defendant's case "in an objective, evenhanded, and substantively rational way from the many Georgia murder cases in which the death penalty may not be imposed." (462 U.S. at p. 879 [77 L.Ed.2d at p. 251].) Therefore, the United States Supreme Court concluded, the defendant's eligibility for the death penalty was not premised on a constitutionally invalid aggravating circumstance. (*Ibid.*)

The high court in *Zant* then considered whether the jury's earlier finding of the existence of the aggravating circumstance that the defendant had "a substantial history of serious assaultive criminal convictions" might have "infected" the jury's sentence choice because the jury was aware of that finding during the "selection" process. The court concluded that the vague aggravating circumstance did not infect the sentence selection process because under Georgia's capital scheme a jury's "finding of an aggravating circumstance does not play any role in guiding the sentencing body in the exercise of its discretion, apart from its function of narrowing the class of persons convicted of murder who are eligible for the death penalty." (*Zant* v. *Stephens, supra,* 462 U.S. at p. 874 [77 L.Ed.2d at p. 248].) But the high court declined to express any view on the possible significance of the sentencer's consideration in the selection of sentence of a "vague" aggravating circumstance "under a statutory scheme in which the judge or jury is specifically instructed to *weigh* statutory aggravating and mitigating circumstances" in deciding whether to impose the death penalty. (*Id.* at p. 890 [77 L.Ed.2d at p. 258], italics added.) Nine years later, in 1992, the high court resolved this issue in *Stringer* v. *Black, supra,* 503 U.S. __ [117 L.Ed.2d 367, 112 S.Ct. 1130], which we review below.

V

*Stringer* v. *Black, supra,* 503 U.S. __ [117 L.Ed.2d 367, 112 S.Ct. 1130], was before the high court on certiorari from the Fifth Circuit Court of Appeals denial of habeas corpus relief to defendant Stringer, who was under a Mississippi death judgment. At Stringer's trial in state court, the jury had found him guilty of capital murder, and at the sentencing phase found the

existence of three alleged statutory aggravating factors, one of which was that the crime was "especially heinous, atrocious or cruel." After weighing those three factors in aggravation against the mitigating evidence, the jury returned a verdict of death. The Mississippi Supreme Court affirmed the death judgment, and Stringer exhausted his direct appeal rights in 1985 when the United States Supreme Court denied his petition for certiorari. (*Stringer v. Mississippi* (1985) 469 U.S. 1230 [84 L.Ed.2d 368, 105 S.Ct. 1231].)

Stringer then sought habeas corpus relief from the federal courts. He relied on two decisions of the United States Supreme Court—*Maynard v. Cartwright, supra,* 486 U.S. 356, and *Clemons* v. *Mississippi* (1990) 494 U.S. 738 [108 L.Ed.2d 725, 110 S.Ct. 1441]—both of which had been decided after Stringer had exhausted his right of direct appeal. In *Maynard,* the United States Supreme Court held that the "especially heinous, atrocious or cruel" aggravating factor used in Oklahoma's capital scheme was impermissibly vague under the Eighth Amendment because it lacked any "narrowing" principle that would provide an objective basis for a reviewing court to distinguish a case in which the death penalty was imposed from the many cases in which it was not. (*Maynard, supra,* at pp. 363-364 [100 L.Ed.2d at pp. 381-382].) Thereafter, in *Clemons,* the high court reviewed a decision of the Mississippi Supreme Court that, applying *Maynard,* had struck down Mississippi's "especially heinous, atrocious or cruel" aggravating factor for being unconstitutionally vague. (*Clemons, supra,* 494 U.S. 738.)

In its argument to the United States Supreme Court, the State of Mississippi argued in *Stringer* that because *Maynard* and *Clemons* were decided after Stringer had exhausted his appeal rights, he was procedurally barred from relying on either case under *Teague* v. *Lane* (1989) 489 U.S. 288 [103 L.Ed.2d 334, 109 S.Ct. 1060]. *Teague* precludes a petitioner who seeks habeas corpus relief in federal court from gaining the benefit of a new decisional rule announced after the petitioner's exhaustion of all direct appeal rights. In rejecting Mississippi's argument, the high court held that with respect to the Mississippi capital punishment scheme, neither *Maynard v. Cartwright, supra,* 486 U.S. 356, nor *Clemons* v. *Mississippi, supra,* 494 U.S. 738, had announced a new rule, and therefore Stringer was not foreclosed under *Teague* from relying on the authority of those cases in his federal habeas corpus proceeding. (*Stringer* v. *Black, supra,* 503 U.S. at p. ___ [117 L.Ed.2d at pp. 376-378, 112 S.Ct. at pp. 1135-1136].)

In the course of explaining why *Clemons* was not a new rule under *Teague* v. *Lane, supra,* 489 U.S. 288, the court highlighted the differences between the Georgia death penalty statute at issue in *Godfrey* v. *Georgia, supra,* 446 U.S. 420, and the Mississippi statutory scheme at issue in *Clemons.* The

court observed, however, that to the extent the differences between the two schemes were "significant," they suggested "that application of the *Godfrey* principle to the Mississippi sentencing process follows, *a fortiori*, from its application to the Georgia system." (*Stringer* v. *Black, supra*, 503 U.S. at p. __ [117 L.Ed.2d at p. 378, 112 S.Ct. at p. 1136].)

In describing the principal distinction between the Georgia and Mississippi capital punishment schemes, the high court in *Stringer* observed: "Mississippi is what we have termed 'a weighing State,' while Georgia is not." (*Stringer* v. *Black, supra*, 503 U.S. at p. __ [117 L.Ed.2d at p. 378, 112 S.Ct. at p. 1136].) In Georgia, a capital jury "must find the existence of one aggravating factor before imposing the death penalty, but aggravating factors as such have no specific function in the jury's [sentencing] decision whether a defendant who has been found to be eligible for the death penalty should receive it under all the circumstances of the case." (*Id.* at p. __ [117 L.Ed.2d at p. 378, 112 S.Ct. at p. 1136].) In contrast, the *Stringer* court explained, "[u]nder Mississippi law, after a jury has found a defendant guilty of capital murder and found the existence of at least one statutory aggravating factor, it must weigh the aggravating factor or factors against the mitigating evidence" before imposing penalty. (*Ibid.*)

The *Stringer* court then turned to the question it left unresolved in *Zant* v. *Stephens, supra*, 462 U.S. 862: whether in a "weighing state" a jury's consideration of an impermissibly vague aggravating circumstance could adversely affect the sentence selection process. The court explained: "In a nonweighing State, so long as the sentencing body finds at least one valid aggravating factor, the fact that it also finds an invalid aggravating factor does not infect the formal process of deciding whether death is an appropriate penalty. Assuming a determination by the state appellate court that the invalid factor would not have made a difference to the jury's determination, there is no constitutional violation resulting from the introduction of the invalid factor in [the narrowing] stage of the proceedings. But when the sentencing body is told to weigh an invalid factor in its [sentence selection] decision, a reviewing court may not assume it would have made no difference if the thumb had been removed from death's side of the scale." (*Stringer* v. *Black, supra*, 503 U.S. at p. __ [117 L.Ed.2d at p. 379, 112 S.Ct. at p. 1137].) The high court explained that a state that uses aggravating factors "in deciding who shall be eligible for the death penalty or who shall receive the death penalty" cannot employ such factors which "fail to guide the sentencer's discretion." (*Id.* at p. __ [117 L.Ed.2d at p. 381, 112 S.Ct. at p. 1139.) The court added: "A vague aggravating factor employed for the purpose of determining whether a defendant is eligible for the death penalty fails to channel the sentencer's discretion. A vague aggravating factor used

in the weighing process is in a sense worse, for it creates the risk that the jury will treat the defendant as more deserving of the death penalty than he might otherwise be by relying upon the existence of an illusory circumstance." (*Id.* at p. __ [117 L.Ed.2d at p. 382, 112 S.Ct. at p. 1139].)

Under the Mississippi capital scheme, when the sentencer considers an aggravating factor that does not comport with the requirements of *Godfrey* v. *Georgia, supra,* 446 U.S. 420 and *Maynard* v. *Cartwright, supra,* 486 U.S. 356, weighing that "vague" or "imprecise" aggravating factor against mitigating evidence during the selection of sentence injects into the constitutionally required "individualized" sentencing process the possibility of "randomness" and "bias in favor of the death penalty." (*Stringer* v. *Black, supra,* 503 U.S. at pp. __, __ [117 L.Ed.2d at pp. 379, 382, 112 S.Ct. at pp. 1137, 1139].)

Thus, in *Stringer* v. *Black, supra,* 503 U.S. __ [117 L.Ed.2d 367, 112 S.Ct. 1130], the United States Supreme Court resolved the issue it left undecided in *Zant* v. *Stephens, supra,* 462 U.S. 862, 890 [77 L.Ed.2d 235, 258], by explaining the effect on a death judgment in a "weighing state" when the sentencer "weighs" a "vague" aggravating factor against mitigating evidence during the sentence selection process. In a state such as Mississippi whose death penalty law provides for the sentencer to weigh those aggravating factors found to exist against the mitigating evidence, the infection of the sentence selection process with an unconstitutionally vague aggravating factor requires a reviewing court to either "reweigh the aggravating and mitigating circumstances [without consideration of the imprecise factor] or undertake harmless-error analysis." (*Stringer* v. *Black, supra,* 503 U.S. at p. __ [117 L.Ed.2d at p. 378, 112 S.Ct. at p. 1136].)

We must now determine whether *Stringer*'s explanation of the effect on a Mississippi death judgment of a "vague" aggravating factor weighed during sentence selection supports defendant's contention here that the sentencing factors in section 190.3 of California's capital scheme are subject to the "vagueness" analysis of *Godfrey* v. *Georgia, supra,* 446 U.S. 420 and *Maynard* v. *Cartwright, supra,* 486 U.S. 356. We conclude that it does not, as we shall explain.

## VI

Defendant reads the United States Supreme Court's decision in *Stringer* v. *Black, supra,* 503 U.S. __ [117 L.Ed.2d 367, 112 S.Ct. 1130], to mean that any state that permits a jury to select a sentence of death by a process that includes a weighing of statutory "aggravating factors" must include in the definition of each aggravating factor a narrowing principle that channels jury discretion and enables a reviewing court to objectively determine whether

the facts of the particular case meet that definition. Defendant maintains that California's capital scheme is subject to this standard because the jury during the penalty phase of a California capital trial determines the appropriate penalty by "weighing" the aggravating and mitigating circumstances specified in section 190.3. We are unpersuaded by this argument.

The standard that defendant would have us employ to evaluate the section 190.3 sentencing factors—whether they are statutorily defined narrowly and precisely enough to channel jury discretion and to enable a reviewing court to objectively determine whether the facts of each case fall inside or outside the definition—is the standard that the United States Supreme Court has mandated for the evaluation of laws that circumscribe the class of *death-eligible* defendants. Were we to accept defendant's argument, factors that our state law uses only in *penalty selection*, to determine whether death or the alternative penalty of life without possibility of parole is the more appropriate sentence, would have to be specific and narrow enough for determining death eligibility, that is, defining the criminal conduct punishable either by death or by life without possibility of parole. This merging of death-eligibility and penalty-selection criteria cannot be reconciled with the distinction the United States Supreme Court has consistently drawn between the "narrowing" and "selection" aspects of capital sentencing.

The "narrowing" aspect of a state's death penalty law that defines the conduct that brings a defendant within the class of persons subject to the death penalty must, to comport with the Eighth Amendment, include "some narrowing principle" so as to limit the members of that class. (*Godfrey* v. *Georgia, supra*, 446 U.S. 420, 428 [64 L.Ed.2d 398, 406]; *Maynard* v. *Cartwright, supra*, 486 U.S. 356, 361 [100 L.Ed.2d 372, 380].) But, when a capital punishment statute adequately narrows the class of death-eligible murderers, the Eighth Amendment does not require a further round of "narrowing" at the sentence selection stage.

Likewise, a statutory provision that defines *death eligibility*, that is, the criminal conduct for which death is a potential penalty, comports with the Eighth Amendment only if it offers a reviewing court an objective basis to distinguish the case under review from the many cases in which the death penalty was not imposed. (*Godfrey* v. *Georgia, supra*, 446 U.S. at p. 433 [64 L.Ed.2d at p. 409].) But the Eighth Amendment places no such restraint on the *sentence selection* process, when the sentencing body must decide whether a defendant already found eligible for the death penalty should actually be sentenced to death. The Georgia capital scheme illustrates this point: in granting the jury "unbridled discretion" in its sentence selection decision, the Georgia capital punishment scheme that the high court upheld

in *Zant* v. *Stephens*, *supra*, 462 U.S. 862, provided no basis whatsoever for a reviewing court to discern the factors that influenced that decision.

Nor does the high court's recent decision in *Stringer* v. *Black*, *supra*, 503 U.S. __ [117 L.Ed.2d 367, 112 S.Ct. 1130], alter our conclusion that the Eighth Amendment standard set forth in *Godfrey* v. *Georgia*, *supra*, 446 U.S. 420, 428 [64 L.Ed.2d 398, 406], and *Maynard* v. *Cartwright*, *supra*, 486 U.S. 356, 361 [100 L.Ed.2d 372, 380], does not apply to California's section 190.3 sentencing factors. Although *Stringer* involved an aggravating factor in the Mississippi capital scheme that the Mississippi Supreme Court had determined to be unconstitutionally vague under *Godfrey* v. *Georgia* and *Maynard* v. *Cartwright*, the United States Supreme Court's decision in *Stringer* does not hold that aggravating factors used only for sentence selection are subject to that same Eighth Amendment standard. Rather, the focus of the high court's opinion in *Stringer* was on the effect of a "vague" aggravating factor when a sentencing jury "weighs" such a factor against mitigating evidence during the sentence selection process. As the court explained, the weighing of aggravating factors in the jury's sentencing decision allows an impermissibly vague aggravating factor to infect the sentence selection process, thereby injecting into the individualized sentencing determination the possibility of "randomness" as well as "bias in favor of the death penalty." (*Stringer* v. *Black*, *supra*, 503 U.S. __, __ [117 L.Ed.2d at p. 382, 112 S.Ct. at p. 1139].) *Stringer* is silent, however, on the Eighth Amendment requirements for aggravating factors such as those set out in section 190.3 of California's capital scheme.

It would be inconsistent with the purpose and function of the section 190.3 sentencing factors to require those factors to satisfy the Eighth Amendment requirements of *Godfrey* v. *Georgia*, *supra*, 446 U.S. 420, and *Maynard* v. *Cartwright*, *supra*, 486 U.S. 356. ■ The section 190.3 factors of our death penalty law "direct the sentencer's attention to specific, provable, and commonly understandable facts about the defendant and the capital crime that might bear on [the defendant's] moral culpability." (*People* v. *Tuilaepa* (1992) 4 Cal.4th 569, 595 [15 Cal.Rptr.2d 382, 842 P.2d 1142], cert. granted Dec. 6, 1993, __ U.S. __ (Dock. No. 93-5131) [126 L.Ed.2d 563, 114 S.Ct. 598].) The " 'facts and circumstances of the defendant, his background, and his crime' " are most relevant to the sentencing decision in a death penalty case. (*Id.* at p. 594, quoting *Clemons* v. *Mississippi*, *supra*, 494 U.S. 738, 748 [108 L.Ed.2d 725, 739].) As we observed in *Tuilaepa*: "[T]he state, within certain limits, has broad latitude to decide how such facts are to be presented and considered at the penalty phase (*Payne* v. *Tennessee* (1991) 501 U.S. [115 L.Ed.2d 720, 735, 111 S.Ct. 2597]; *Boyde* v. *California* (1990) 494 U.S. 370, 377 [108 L.Ed.2d 316, 326, 110 S.Ct. 1190]). By the same token, the

individualized penalty determination required by the Eighth Amendment makes inevitable application of the sentencer's own values, perceptions, and experiences to the factors the state properly deems relevant. (*Eddings* v. *Oklahoma* [*supra*,] 455 U.S. 104, 110-112 [71 L.Ed.2d 1, 8-9, 102 S.Ct. 869].)" (*People* v. *Tuilaepa*, *supra*, 4 Cal.4th at p. 594.)

Any meaningful assessment of the moral culpability of a defendant convicted of the crime of capital murder will invariably include some facts about the offense and the offender that will weigh in the sentencing decision in favor of the more severe penalty of death. The section 190.3 "aggravating" factors in California's capital scheme do no more than direct attention to such facts. ■ Because they do not perform a "narrowing" function, they are not subject to the standard that the United States Supreme Court articulated in *Godfrey* v. *Georgia*, *supra*, 446 U.S. 420, and in *Maynard* v. *Cartwright*, *supra*, 486 U.S. 356.

We do not, however, suggest that the Eighth Amendment imposes no standards whatsoever on those sentencing factors in section 190.3 of our 1978 death penalty law that can serve to aggravate penalty. As we explained in *People* v. *Tuilaepa*, *supra*, 4 Cal.4th at page 595, these factors must meet the dual standards of "specificity" and of "relevance." They must be defined in terms sufficiently clear and specific that jurors can understand their meaning, and they must direct the sentencer to evidence relevant to and appropriate for the penalty determination.[4]

To meet these dual criteria, sentencing factors should not inject into the individualized sentencing determination the possibility of "randomness" or "bias in favor of the death penalty." (*Stringer* v. *Black*, *supra*, 503 U.S. __, __ [117 L.Ed.2d at p. 382, 112 S.Ct. 1130 at p. 1139].) Inappropriate for consideration in the sentence selection process would be any aggravating factor that was either "seriously and prejudicially misleading," or that invited "the jury to be influenced by a speculative or improper consideration[ ]," such as the race or political beliefs of the defendant that are without any bearing on moral culpability. (*People* v. *Ramos* (1984) 37 Cal.3d 136, 153 [207 Cal.Rptr. 800, 689 P.2d 430]; *Dawson* v. *Delaware* (1992) __ U.S. __ [117 L.Ed.2d 309, 112 S.Ct. 1093].)

---

[4]Justice Mosk's concurring and dissenting opinion is in apparent accord with this conclusion. The opinion highlights the passage in *Stringer* v. *Black, supra,* 503 U.S. at p. __ [117 L.Ed.2d at pp. 381-382, 112 S.Ct. at p. 1139] explaining that a state cannot use aggravating factors in its capital punishment scheme that "fail to guide the sentencer's discretion." It then concludes that this "[c]onsequently" means that California's section 190.3 aggravating factors must be "clearly defined." (Conc. and dis. opn., *post*, at p. 487.) Nowhere does the concurring and dissenting opinion suggest that aggravating factors used only in sentence selection must, as defendant contends, provide some "narrowing" principle and be sufficiently objective that a reviewing court can determine why the death penalty was imposed.

Against these dual standards of specificity and relevance, we now consider defendant's challenges in this case to the section 190.3 sentencing factors.

## VII

██ Defendant here renews the contention he raised in *Bacigalupo I* to factor (b) of section 190.3 in California's capital scheme. Factor (b) permits the sentencer at the penalty phase of a capital case to take into account "[t]he presence or absence of *criminal* activity by the defendant which involved the use or attempted use of force or *violence* . . . ." (Italics added.) Defendant argues that the italicized terms are "unconstitutionally 'vague' " because they fail to focus the jury's attention on specific aggravating conduct that would permit " 'a principled distinction between those who deserve the death penalty and those who do not.' " (*Bacigalupo I*, *supra*, 1 Cal.4th at pp. 147-148.) But, as we explained previously, the Eighth Amendment standard of precision that defendant invokes does not govern statutory factors such as factor (b) that a California penalty phase jury considers in the sentence selection process. Such factors violate the Eighth Amendment only if they are insufficiently specific or if they direct the sentencer to facts not relevant to the penalty evaluation. (*People* v. *Tuilaepa*, *supra*, 4 Cal.4th 569, 595.)

As mentioned earlier, factor (b) of section 190.3, in accord with its function in the sentence selection process, directs the penalty phase jury "to specific, provable, and commonly understandable facts about the defendant and the capital crime that might bear on [the defendant's] moral culpability." (*People* v. *Tuilaepa*, *supra*, 4 Cal.4th at p. 595.) Moreover, evidence of a defendant's criminal conduct, especially when such conduct involves acts of violence directed at another person, is of the "general type long considered by sentencing authorities," and is particularly relevant to the penalty decision. (*Payne* v. *Tennessee*, *supra*, 501 U.S. at p. __ [115 L.Ed.2d at p. 735, 111 S.Ct. at p. 2608]; see *Barclay* v. *Florida*, *supra*, 463 U.S. at p. 956 [77 L.Ed.2d at pp. 1147-1148] [describing a capital defendant's criminal record as appropriate for sentencer consideration in deciding penalty].) In our view, the United States Supreme Court's capital jurisprudence requires no more.

██ Turning to factor (a) of section 190.3, defendant contends that because it contains no "narrowing principle" and provides no objective basis for appellate review of a death judgment, it is impermissibly vague under the Eighth Amendment. We disagree.

Factor (a) uses clearly understandable terms to designate for jury consideration in sentence selection, "[t]he circumstances of the crime of which the

defendant was convicted in the present proceeding and the existence of any special circumstances found to be true . . . ." (§ 190.3, factor (a).) In any criminal case the circumstances of the crime of which the defendant stands convicted are the single most pertinent sentencing consideration. Indeed, by directing the sentencer to consider the circumstances of the capital crime, factor (a) of section 190.3 embodies a consideration that the United States Supreme Court has identified as " 'a constitutionally indispensable part of the process of inflicting the penalty of death.' " (*Johnson* v. *Texas, supra*, __ U.S. __ [125 L.Ed.2d 290, 301, 113 S.Ct. 2658, 2665]; *People* v. *Tuilaepa, supra*, 4 Cal.4th at p. 594; *People* v. *Proctor* (1993) 4 Cal.4th 499, 551 [15 Cal.Rptr.2d 340, 842 P.2d 1100].) Therefore, when a California jury considers the circumstances of a defendant's capital crimes for the purpose of making an individualized determination whether life without possibility of parole or death is the appropriate penalty for a defendant already determined to be within the narrowed class of death-eligible murderers, there can be no violation of the Eighth Amendment prohibition against cruel and unusual punishments.

## CONCLUSION

We affirm the judgment in its entirety.

Lucas, C. J., Arabian, J., Baxter, J., and George, J., concurred.

**PANELLI, J.**—I concur in the judgment.

In *People* v. *Bacigalupo* (1991) 1 Cal.4th 103 [2 Cal.Rptr.2d 335, 820 P.2d 559] (*Bacigalupo I*) appellant claimed that one of our sentencing factors (Pen. Code, § 190.3, factor (b) [prior violent criminal conduct]) was impermissibly vague under the Eighth Amendment to the United States Constitution. We rejected appellant's claim, reasoning that the United States Supreme Court had thus far applied Eighth Amendment vagueness analysis only to "statutes that govern 'those circumstances that make a criminal defendant "eligible" for the death penalty.' " (*Bacigalupo I, supra*, 1 Cal.4th at p. 148, quoting *Lewis* v. *Jeffers* (1990) 497 U.S. 764, 774 [111 L.Ed.2d 606, 619, 110 S.Ct. 3092, 3099].) In California it is the special circumstances set out in Penal Code section 190.2 that make a defendant eligible for death. The sentencing factors set out in section 190.3 apply only after the defendant has already been found death-eligible under section 190.2.

When appellant renewed his claim in a petition for certiorari, the high court granted the petition, vacated our judgment, and remanded the case "for further consideration in light of *Stringer* v. *Black* [(1992)] 503 U.S. __ [117

L.Ed.2d 367, 112 S.Ct. 1130]." (*Bacigalupo* v. *California* (1992) __ U.S. __ [121 L.Ed.2d 5, 113 S.Ct. 32].)

In *Stringer* v. *Black* (1992) 503 U.S. __ [117 L.Ed.2d 367, 112 S.Ct. 1130] (*Stringer*), the high court applied Eighth Amendment vagueness analysis, as articulated in *Godfrey* v. *Georgia* (1980) 446 U.S. 420 [64 L.Ed.2d 398, 100 S.Ct. 1759] and *Maynard* v. *Cartwright* (1988) 486 U.S. 738 [100 L.Ed.2d 372, 108 S.Ct. 1853], to Mississippi law. The language in *Stringer* that undoubtedly prompted the high court to remand this case reads as follows: "Although our precedents do not require the use of aggravating factors, they have not permitted a State in which aggravating factors are decisive to use factors of vague or imprecise content. A vague aggravating factor employed for the purpose of determining whether a defendant is eligible for the death penalty fails to channel the sentencer's discretion. A vague aggravating factor used in the weighing process is in a sense worse, for it creates the risk that the jury will treat the defendant as more deserving of the death penalty than he might otherwise be by relying upon the existence of an illusory circumstance. Because the use of a vague aggravating factor in the weighing process creates the possibility not only of randomness but also of bias in favor of the death penalty, we cautioned in *Zant* [v. *Stephens* (1983) 462 U.S. 862 (77 L.Ed.2d 235, 103 S.Ct. 2733)] that there might be a requirement that when the weighing process has been infected with a vague factor the death sentence must be invalidated." (*Stringer, supra*, 503 U.S. at p. __ [117 L.Ed.2d at p. 382, 112 S.Ct. at p. 1139].)

The question that the high court's order requires us to answer is whether *Stringer* has anything to say about California's sentencing factors. The better reading of *Stringer*, in my view, is that it does not.

In *Stringer* the high court applied Eighth Amendment vagueness analysis to the statutory factors that make a defendant eligible for death in Mississippi. In that state, "[f]or a defendant who has been convicted of capital murder to receive the death sentence, the jury must find at least one of eight statutory aggravating factors, and then it must determine that the aggravating factor or factors are not outweighed by the mitigating circumstances, if any." (*Stringer, supra*, 503 U.S. at p. __ [117 L.Ed.2d at p. 375, 112 S.Ct. at p. 1134]; see Miss. Code Ann. § 99-19-101.)

Under Mississippi law, the weighing process cannot begin, and the defendant is not eligible for the death penalty, unless and until the jury has found at least one aggravating factor to be true. Thus, by condemning "[t]he use of a vague aggravating factor in the weighing process" (503 U.S. at p. __ [117 L.Ed.2d at p. 382, 112 S.Ct. at p. 1139]), the high court in *Stringer* appears

to have meant only that the harm caused by finding a defendant eligible for death under an unconstitutionally vague aggravating factor is not undone, and is indeed worsened, by permitting the jury to weigh the invalid factor against mitigating evidence later in the sentencing process. On its face, this holding has no obvious application to sentencing factors that, like California's, first come into play only after the defendant has already been found eligible for death.

I am aware that the Mississippi Supreme Court has said that the narrowing process in that state ends, and a defendant becomes eligible for death, upon conviction of capital murder even though, at that point, the jury has yet to make the required finding that at least one aggravating factor is true. (*Ladner* v. *State* (Miss. 1991) 584 So.2d 743, 763.) However, it makes no sense as a practical matter to say that the narrowing process has ended and a defendant is eligible for death before the jury has made a finding that must be made before the weighing process can begin. I find implicit confirmation of this view in the *Stringer* court's failure to endorse the Mississippi Supreme Court's understanding of when the narrowing process ends.

The concurring and dissenting opinion reads *Stringer* as saying that the high court will now apply Eighth Amendment vagueness analysis not just to the factors that make a defendant eligible for the death penalty but also to the factors that assist a jury in selecting the appropriate punishment for a defendant who has already been found death-eligible. In reaching this conclusion, the concurring and dissenting opinion attributes much significance to the statement in *Stringer* that, in *Clemons* v. *Mississippi* (1990) 494 U.S. 738 [108 L.Ed.2d 725, 110 S.Ct. 1441], the high court "took for granted . . . the proposition that if a State uses aggravating factors in deciding who shall be eligible for the death penalty *or who shall receive the death penalty*, it cannot use factors which as a practical matter fail to guide the sentencer's discretion." (*Stringer*, *supra*, 503 U.S. at p. ___ [117 L.Ed.2d at p. 381, 112 S.Ct. at p. 1139], italics added.) I attribute less significance to the statement because it occurred in the context of a discussion of Mississippi law, which is significantly different than California's.

California's statutory sentencing factors, in contrast to Mississippi's, do not articulate propositions that the jury must find to be true or false. Instead, California's factors merely direct the jury's attention to relevant evidence, such as, for example, the circumstances of the crime, the presence or absence of prior violent criminal activity, and the defendant's age at the time of the offense. (Pen. Code, § 190.3, factors (a), (b) & (i).) Nor does the California jury, unlike the Mississippi jury, make findings about the state of the aggravating evidence before the weighing process can begin. The high court

has never applied Eighth Amendment vagueness analysis to a statute like California's.[1]

Moreover, the principle that invalidates a statute requiring the jury to determine, as a precondition to imposing the death penalty, that a murder "was especially heinous, atrocious or cruel" (Miss. Code Ann. § 99-19-101 (5)(h); see *Stringer, supra*, 503 U.S. __ [117 L.Ed.2d 367, 112 S.Ct. 1130]) does not clearly have anything to say about a statute that merely directs the jury to consider relevant evidence. A statute like the former (Mississippi's) declares that a particular act ("heinous, atrocious or cruel" murder) is punishable in a particular manner (death) and, thus, closely resembles an ordinary criminal prohibition. The *Godfrey* standard, which requires that death-eligibility criteria provide "clear and objective standards" for distinguishing when the death penalty is and is not appropriate (*Godfrey* v. *Georgia, supra*, 446 U.S. at pp. 427-429 [64 L.Ed.2d at pp. 405-406]), is analogous to the vagueness standard that courts have long applied, whether under the Eighth Amendment or the Fourteenth, to statutes that apply criminal penalties to specified conduct.

In contrast, a statute like the latter (California's) merely directs the jury's attention to the types of evidence that make a defendant who has already been found eligible for the most serious penalty more or less deserving of that penalty, leaving "[e]ach juror . . . free to assign whatever moral or sympathetic value he deems appropriate to each and all of the various factors . . . ." (*People* v. *Brown* (1985) 40 Cal.3d 512, 541 [220 Cal.Rptr. 637, 709 P.2d 440].) It is not immediately clear what, if anything, the *Godfrey* standard has to say about such a statute.

Thus, while I acknowledge that it is *possible* to read *Stringer* as saying that Eighth Amendment vagueness analysis applies to sentencing factors that come into play only after the defendant has been found eligible for death, that reading is far from obvious. Moreover, if the high court was addressing sentencing factors such as California's when it condemned the use of vague aggravating factors in the weighing process (*Stringer* v. *Black, supra*, 503

---

[1]Recent cases in which petitioners have challenged aggravating factors as vague have involved laws similar to Mississippi's, under which the sentencer must find at least one aggravating factor true before weighing such factor or factors against the mitigating evidence. (*Richmond* v. *Lewis* (1992) 506 U.S. __ [121 L.Ed.2d 411, 113 S.Ct. 528] [interpreting Arizona law, under which "[t]he death penalty may be imposed only if at least one of 10 statutory aggravating circumstances exists" (*Arizona* v. *Kiles* (1993) 137 Ariz. 8 [857 P.2d 1212, 1223]; see Ariz. Rev. Stat. Ann. § 13-703(E)]; *Espinosa* v. *Florida* (1992) 505 U.S. __ [120 L.Ed.2d 854, 112 S.Ct. 2926] [interpreting Florida law, under which "death may be the appropriate recommendation if, and only if, at least one statutory aggravating factor is established" (*Dougan* v. *Florida* (Fla. 1992) 595 So.2d 1, 4; see Fla. Stat. § 921.141(2)(a))].)

U.S. at p. __ [117 L.Ed.2d at p. 382, 112 S.Ct. at p. 1139]), then it did so in language that was far from clear and in a case that did not raise the issue.

The majority's opinion in this case reflects *Stringer*'s ambiguity as applied to California law. In its first 30 pages, the majority demonstrates that *Stringer* does not support "defendant's contention here that the sentencing factors in section 190.3 of California's capital scheme are subject to the 'vagueness' analysis of *Godfrey* v. *Georgia, supra,* 446 U.S. 420, and *Maynard* v. *Cartwright, supra,* 486 U.S. 356." (Maj. opn., *ante,* at p. 474.) I believe this is correct and accordingly concur in this part of the opinion.

However, after announcing its conclusion the majority qualifies it with the statement, which I find inconsistent, that "[w]e do not, however, suggest that the Eighth Amendment imposes no standards whatsoever on those sentencing factors in section 190.3 of our 1978 death penalty law that can serve to aggravate penalty." (Maj. opn., *ante,* at p. 477.) The majority then goes on to create a new Eighth Amendment vagueness standard that applies, apparently, only to sentencing factors that come into play after a defendant has already been found eligible for death. According to the majority, "[s]uch factors violate the Eighth Amendment only if they are insufficiently specific or if they direct the sentencer to facts not relevant to the penalty evaluation." (Maj. opn., *ante,* at p. 478.)

The majority bases the new vagueness standard on *People* v. *Tuilaepa* (1992) 4 Cal.4th 569 [15 Cal.Rptr.2d 382, 842 P.2d 1142]. In *Tuilaepa,* however, we did not purport to announce such a standard. Instead, we merely "[a]ssum[ed] without deciding that section 190.3 [was] subject to [the] 'vagueness' concerns" articulated in *Stringer* (*Tuilaepa, supra,* 4 Cal.4th at p. 594) and, based on that assumption, concluded that our sentencing factors were not vague (*id.* at p. 595). By creating a new vagueness standard the majority today goes much farther than we went in *Tuilaepa.*

The majority also finds support for its new vagueness standard in *Stringer* itself. (Maj. opn., *ante,* at p. 477.) But in view of the majority's earlier conclusion that the vagueness analysis articulated in *Stringer* does not apply to California's sentencing factors, it is difficult for me to understand how *Stringer* is an appropriate citation. Either *Stringer* applies to our sentencing factors or it does not.

This, in my view, is how we should resolve the instant case: Properly interpreted, *Stringer* has nothing to say about California's sentencing factors; but assuming for the sake of argument that it does, our sentencing factors are not vague. We have found this approach to be satisfactory in prior opinions

(e.g., *People* v. *Montiel* (1993) 5 Cal.4th 877, 944 [21 Cal.Rptr.2d 705, 855 P.2d 1277]; *People* v. *Sims* (1993) 5 Cal.4th 405, 465-466 [20 Cal.Rptr.2d 537, 853 P.2d 992]; *People* v. *Stansbury* (1993) 4 Cal.4th 1017, 1071 [17 Cal.Rptr.2d 174, 846 P.2d 756]; *People* v. *Tuilaepa, supra,* 4 Cal.4th at pp. 594-595), and I agree for the reasons stated in those opinions that our sentencing factors are not vague. In contrast, the majority's approach burdens California's criminal law with a new Eighth Amendment requirement that will affect no other state because of the limited precedential value of our decisions on matters of federal law. Because our prior opinions show that we need not take such a step to ensure that our judgments satisfy the Eighth Amendment, I would not take it.

**MOSK, J.,** Concurring and Dissenting.—I concur in the judgment.

When this cause was originally before us in *People* v. *Bacigalupo* (1991) 1 Cal.4th 103 [2 Cal.Rptr.2d 335, 820 P.2d 559] (hereafter sometimes *Bacigalupo I*), having found no reason to reverse, I was of the view that the judgment, including the sentence of death, should be affirmed. (*Id.* at pp. 152-154 (conc. opn. of Mosk, J.).) In *Bacigalupo* v. *California* (1992) __ U.S. __ [121 L.Ed.2d 5, 113 S.Ct. 32], the United States Supreme Court vacated our judgment and remanded the cause to us for further consideration in light of *Stringer* v. *Black* (1992) 503 U.S. __ [117 L.Ed.2d 367, 112 S.Ct. 1130] (hereafter sometimes *Stringer*). After such consideration, and having still found no reason to reverse, I remain of the view that the judgment should be affirmed.

Except as to disposition, however, I dissent. Both the majority and the concurring justice declare, more or less openly, that *Stringer* does not apply to the California death penalty law. Both are in error. For reasons I cannot fathom, they flout the authority of the United States Supreme Court and thereby guarantee the granting of defendant's inevitable petition for writ of certiorari, risking unforeseeable consequences. The high court has been quick to intervene when lower courts have been recalcitrant. (See, e.g., *Yates* v. *Evatt* (1991) 500 U.S. 391 [114 L.Ed.2d 432, 111 S.Ct. 1884].) It will surely do the same in this case. Indeed, it must. Otherwise, it will expose all its decisions to the same ill treatment here inflicted on *Stringer*.

I

In *Stringer*, the United States Supreme Court held that "if a State uses aggravating factors in deciding who shall be eligible for the death penalty or who shall receive the death penalty, it cannot use factors which as a practical matter fail to guide the sentencer's discretion" in contravention of the Eighth

Amendment. (*Stringer* v. *Black*, *supra*, 503 U.S. at p. __ [117 L.Ed.2d at p. 381, 112 S.Ct. at p. 1139].)

The *Stringer* court declared: "Although our precedents do not require the use of aggravating factors, they have not permitted a State in which aggravating factors are decisive to use factors of vague or imprecise content." (*Stringer* v. *Black*, *supra*, 503 U.S. at p. __ [117 L.Ed.2d at p. 382, 112 S.Ct. at p. 1139].)

The *Stringer* court explained: "A vague aggravating factor employed for the purpose of determining whether a defendant is eligible for the death penalty fails to channel the sentencer's discretion." (*Stringer* v. *Black*, *supra*, 503 U.S. at p. __ [117 L.Ed.2d at p. 382, 112 S.Ct. at p. 1139].)

The *Stringer* court explained further: "A vague aggravating factor used in the weighing process is in a sense worse, for it creates the risk that the jury will treat the defendant as more deserving of the death penalty than he might otherwise be by relying upon the existence of an illusory circumstance. . . . [T]he use of a vague aggravating factor in the weighing process creates the possibility not only of randomness but also of bias in favor of the death penalty . . . ." (*Stringer* v. *Black*, *supra*, 503 U.S. at p. __ [117 L.Ed.2d at p. 382, 112 S.Ct. at p. 1139].) In this regard, an aggravating factor is vague if it does not "adequately . . . inform juries what they must find to impose the death penalty . . . ." (*Maynard* v. *Cartwright* (1988) 486 U.S. 356, 361-362 [100 L.Ed.2d 372, 380, 108 S.Ct. 1853] [hereafter sometimes *Maynard*].)

To cast the *Stringer* court's explanation in somewhat different words: A "vague aggravating factor employed for the purpose of determining whether a defendant is eligible for the death penalty" blurs the line that defines the class of the death-eligible. (*Stringer* v. *Black*, *supra*, 503 U.S. at p. __ [117 L.Ed.2d at p. 382, 112 S.Ct. at p. 1139].) For its part, a "vague aggravating factor used in the weighing process" to determine whether a defendant will actually receive the death penalty undermines individualized sentencing among the members of the death-eligible class. (*Ibid.*)

The Eighth Amendment's proscription against vague aggravating factors, as set out in *Stringer*, evidently arose in *Godfrey* v. *Georgia* (1980) 446 U.S. 420 [64 L.Ed.2d 398, 100 S.Ct. 1759] (hereafter sometimes *Godfrey*), which reviewed an aggravating factor used to determine whether a defendant was eligible for the death penalty. *Godfrey* was followed by *Maynard* v. *Cartwright*, *supra*, 486 U.S. 356. The proscription was extended in decisions that considered aggravating factors used to determine whether a defendant would actually receive the death penalty. In *Stringer*, the proscription is often

indicated by reference to *Godfrey* and/or *Maynard*, whether the aggravating factor in question is employed for either or both purposes. (See *Stringer* v. *Black*, *supra*, 503 U.S. at pp. \_\_-\_\_ [117 L.Ed.2d at pp. 376-383, 112 S.Ct. at pp. 1135-1140] [holding in substance that *Godfrey* and *Maynard* govern both definition of the death-eligible class and individualized sentencing among its members].) Indeed, by 1990 the court had "[taken] for granted . . . the proposition that if a State uses aggravating factors in deciding who shall be eligible for the death penalty *or* who shall receive the death penalty, it cannot use factors which as a practical matter fail to guide the sentencer's discretion" in contravention of the Eighth Amendment. (*Stringer* v. *Black*, *supra*, 503 U.S. at p. \_\_ [117 L.Ed.2d at p. 381, 112 S.Ct. at p. 1139], italics added.)

In *Richmond* v. *Lewis* (1992) \_\_ U.S. \_\_, \_\_ [121 L.Ed.2d 411, 420, 113 S.Ct. 528, 534], which was decided the term following *Stringer* and effectively explicated that decision, the court declared that the "relevant Eighth Amendment law is well defined. First, a statutory aggravating factor is unconstitutionally vague if it fails to furnish principled guidance for the choice between death and a lesser penalty. See, *e.g.*, *Maynard* v. *Cartwright*, 486 U.S. 356, 361-364 [100 L.Ed.2d 372, 380-382] (1988); *Godfrey* v. *Georgia*, 446 U.S. 420, 427-433 [64 L.Ed.2d 398, 405-409] (1980). Second, in a 'weighing' State, where the aggravating and mitigating factors are balanced against each other, it is constitutional error for the sentencer to give weight to an unconstitutionally vague aggravating factor, even if other, valid aggravating factors obtain."

It should be noted that *Stringer* was not a unanimous decision. The question presented therein was, in substance, "whether in a federal habeas corpus proceeding a petitioner [was] foreclosed from relying on" the Eighth Amendment's proscription against vague aggravating factors on the ground that it amounted to a "new rule as defined in *Teague* v. *Lane*, 489 U.S. 288 [103 L.Ed.2d 334, 109 S.Ct. 1060] (1989)" if applied to a judgment that became final in 1985. (*Stringer* v. *Black*, *supra*, 503 U.S. at p. \_\_ [117 L.Ed.2d at p. 375, 112 S.Ct. at p. 1133].) There was a majority opinion, which gave a negative answer; it was authored by Justice Kennedy and joined by Chief Justice Rehnquist and Justices White, Blackmun, Stevens, and O'Connor. (*Id.* at pp. \_\_-\_\_ [117 L.Ed.2d at pp. 375-383, 112 S.Ct. at pp. 1133-1140] (opn. for the court by Kennedy, J.).) There was also a dissenting opinion, which would have given an affirmative answer; it was authored by Justice Souter and joined by Justices Scalia and Thomas. (*Id.* at pp. \_\_-\_\_ [117 L.Ed.2d at pp. 383-390, 112 S.Ct. at pp. 1140-1146] (dis. opn. of Souter, J.).)

But more important for present purposes, it should also be noted that in *Stringer* the members of the court were in fact unanimous as to the existence

of the Eighth Amendment's proscription against vague aggravating factors and its general applicability to all such factors—at least since 1990—whether used to determine death eligibility or penalty or both. (See *Stringer* v. *Black, supra,* 503 U.S. at pp. ___-___ [117 L.Ed.2d at pp. 375-383, 112 S.Ct. at pp. 1133-1140] (opn. for the court by Kennedy, J.); *id.* at pp. ___-___ [117 L.Ed.2d at pp. 383-390, 112 S.Ct. at pp. 1140-1146] (dis. opn. of Souter, J.).)

## II

California uses "aggravating factors"—labeled "special circumstances" in Penal Code section 190.2, subdivision (a)—to decide who shall be eligible for the death penalty. "The penalty for a defendant found guilty of murder in the first degree shall be death or confinement in state prison for a term of life without the possibility of parole in any case in which one or more of" certain specified "special circumstances has been found . . . to be true . . . ." (Pen. Code, § 190.2, subd. (a).)

California also uses "aggravating factors"—bearing that very label in Penal Code section 190.3—to decide who shall receive the death penalty. "In determining the penalty, the trier of fact shall take into account any of" certain specified "aggravating and mitigating" "factors if relevant . . . ." (Pen. Code, § 190.3.) "[T]he trier of fact shall consider, take into account and be guided by the aggravating and mitigating circumstances [as specified] . . . , and shall impose a sentence of death if the trier of fact concludes that the aggravating circumstances outweigh the mitigating circumstances. If the trier of fact determines that the mitigating circumstances outweigh the aggravating circumstances the trier of fact shall impose a sentence of confinement in state prison for a term of life without the possibility of parole." (*Ibid.*)

It follows from the foregoing that, inasmuch as California "uses aggravating factors"—labeled "special circumstances"—"in deciding who shall be eligible for the death penalty . . . , it cannot use factors which as a practical matter fail to guide the sentencer's discretion" in contravention of the Eighth Amendment. (*Stringer* v. *Black, supra,* 503 U.S. at p. ___ [117 L.Ed.2d at p. 381, 112 S.Ct. at p. 1139].) Consequently, our special circumstances must be clearly defined.

Similarly, and of particular importance here, inasmuch as California "uses aggravating factors"—bearing that very label—"in deciding . . . who shall receive the death penalty, it cannot use factors which as a practical matter fail to guide the sentencer's discretion" in contravention of the Eighth

Amendment. (*Stringer* v. *Black, supra*, 503 U.S. at p. ___ [117 L.Ed.2d at p. 381, 112 S.Ct. at p. 1139].) Consequently, our aggravating factors too must be clearly defined. That means that they must "adequately . . . inform juries what they must find to impose the death penalty . . . ." (*Maynard* v. *Cartwright, supra*, 486 U.S. at pp. 361-362 [100 L.Ed.2d at p. 380].)

## III

The majority and the concurring justice generally disagree with the reasoning and conclusions set forth above. In this, they err.

To the extent that the majority and the concurring justice state or imply that aggravating factors under California law need not perform the function of deciding who shall be eligible for the death penalty, they are plainly correct. Our special circumstances accomplish that task. The Eighth Amendment does not demand redundancy. The majority misunderstand defendant to claim that our aggravating factors must perform the death-eligibility function. In this regard, they apparently mistake his references to *Godfrey* and *Maynard*. As noted above, in the view of the *Stringer* court, *Godfrey* and *Maynard* govern not only definition of the death-eligible class but also individualized sentencing among its members. (See *Stringer* v. *Black, supra*, 503 U.S. at pp. ___-___ [117 L.Ed.2d at pp. 376-383, 112 S.Ct. at pp. 1135-1140].) For purposes here, I need only note the majority's misunderstanding. Defendant will surely explicate the matter further before the United States Supreme Court on certiorari.

To the extent that the majority and the concurring justice state or imply that aggravating factors under California law need not be clearly defined, they are plainly incorrect. They founder on *Stringer*.

To repeat *Stringer*'s plain words: "[I]f a State"—like California—"uses aggravating factors in deciding . . . who shall receive the death penalty, it cannot use factors which as a practical matter fail to guide the sentencer's discretion" in contravention of the Eighth Amendment. (*Stringer* v. *Black, supra*, 503 U.S. at p. ___ [117 L.Ed.2d at p. 381, 112 S.Ct. at p. 1139].)

To rehearse *Stringer*'s express rationale: "[T]he use of a vague aggravating factor in the weighing process creates the possibility not only of randomness but also of bias in favor of the death penalty . . . ." (*Stringer* v. *Black, supra*, 503 U.S. at p. ___ [117 L.Ed.2d at p. 382, 112 S.Ct. at p. 1139].) Let us assume that our aggravating factor comprising "the circumstances of the crime" is vague. Let us further assume that it may invite consideration of, say, a defendant's physical repulsiveness and/or his membership in a

disfavored religious group. Could we dismiss the threat of "randomness" and/or "bias" *in the actual imposition* of the death penalty on the defendant by simply asserting that he was nevertheless *eligible* for that sentence? Manifestly, we could not do so—at least not without offense to the Eighth Amendment.

In the course of their opinion, the majority say too little about points that matter. Indeed, they barely acknowledge *Stringer*'s crucial holding: "[I]f a State"—like California—"uses aggravating factors in deciding . . . who shall receive the death penalty, it cannot use factors which as a practical matter fail to guide the sentencer's discretion" in contravention of the Eighth Amendment. (*Stringer* v. *Black, supra*, 503 U.S. at p. __ [117 L.Ed.2d at p. 381, 112 S.Ct. at p. 1139].) Only by effectively denying the very existence of these plain words can they assert that "*Stringer* is silent . . . on the Eighth Amendment requirements for aggravating factors such as" ours. (Maj. opn., *ante*, at p. 476.)

At the same time, the majority say too much about points that do not matter—presenting, as they do, a general disquisition on Eighth Amendment jurisprudence and the California death penalty law.

In *Bacigalupo I*, defendant contended that the aggravating factors under California law are subject to the Eighth Amendment's proscription against vagueness. The majority therein rejected the claim: "Under decisions of the United States Supreme Court, the Eighth Amendment's 'vagueness' evaluation . . . has been applied only to statutes that govern 'those circumstances that make a criminal defendant "eligible" for the death penalty.' [Citation.] The statute at issue here, [Penal Code] section 190.3, does not govern those circumstances. Under the California death penalty scheme, the determination that a defendant is eligible for the death penalty is made when the jury finds the special circumstance allegation to be true. [Citations.] [Penal Code] [s]ection 190.3 does not govern the circumstances making a defendant eligible for the death penalty but instead pertains to the sentencing stage at which the jury decides 'from among that class [of persons eligible for the death penalty], those defendants who will actually be sentenced to death.' " (*People* v. *Bacigalupo, supra*, 1 Cal.4th at p. 148.)

In *Stringer*, as noted, the United States Supreme Court held: "[I]f a State uses aggravating factors in deciding who shall be eligible for the death penalty *or who shall receive the death penalty*, it cannot use factors which as a practical matter fail to guide the sentencer's discretion" in contravention of the Eighth Amendment. (*Stringer* v. *Black, supra*, 503 U.S. at p. __ [117 L.Ed.2d at p. 381, 112 S.Ct. at p. 1139], italics added.)

In *Bacigalupo v. California, supra,* __ U.S. __ [121 L.Ed.2d 5, 113 S.Ct. 32], as also noted, the United States Supreme Court remanded the cause to us, after vacating our judgment, for further consideration in light of *Stringer.* What it desired us to do is plain: to correct the error that appears in the passage quoted from *Bacigalupo I.* The majority refuse to do so. Rather, as stated above, they present a general disquisition on Eighth Amendment jurisprudence and the California death penalty law. In their discussion, moreover, they go astray. For example, it is not the case that a "death-eligibility criterion" that does not "include some narrowing principle" "is deemed impermissibly *vague* under the Eighth Amendment." (Maj. opn., *ante,* at p. 462, italics added.) Rather, it is *overbroad.*

For his part, the concurring justice initially attempts to construe *Stringer* as applicable *only if* a state uses aggravating factors in determining *both* death eligibility *and* penalty. That decision, however, simply cannot be limited to such "dual use" aggravating factors without intolerable violence to its plain words. It expressly governs "if a State uses aggravating factors in deciding who shall be eligible for the death penalty *or* who shall receive the death penalty . . . ." (*Stringer* v. *Black, supra,* 503 U.S. at p. __ [117 L.Ed.2d at p. 381, 112 S.Ct. at p. 1139], italics added.)

The concurring justice next attempts to avoid *Stringer* by distinguishing Mississippi's death penalty law from California's.

He first tries to distinguish California and Mississippi law by construing Mississippi to use aggravating factors in deciding *both* who shall be eligible for the death penalty *and* who shall actually receive the death penalty. He fails.

Mississippi law determines death eligibility through conviction of capital murder, without consideration of any aggravating or mitigating factors. (See Miss. Code Ann. § 97-3-19(2) (1993); accord, *ibid.* (Supp. 1991).) It then determines penalty at a sentencing phase at which, for the first time, such factors come into play. (See *id.,* § 99-19-101 (1993); accord, *ibid.* (Supp. 1991).) In *Ladner* v. *State* (Miss. 1991) 584 So.2d 743, 763, the Mississippi Supreme Court explained: The "constitutionally required narrowing of the class of persons eligible for the death penalty is accomplished by the legislative definition of capital offenses in the guilt phase . . . . [T]he jury's further narrowing in the sentencing phase is not constitutionally required."

The *Stringer* court got it right: "Under Mississippi law the death sentence may be imposed for murders designated by statute as 'capital murder.' . . . Following a capital murder conviction, the jury in the Mississippi system

proceeds to the sentencing phase of the case. For a defendant who has been convicted of capital murder to receive the death sentence, the jury must find at least one of eight statutory aggravating factors, and then it must determine that the aggravating factor or factors are not outweighed by the mitigating circumstances, if any." (*Stringer* v. *Black, supra*, 503 U.S. at p. __ [117 L.Ed.2d at p. 375, 112 S.Ct. at p. 1134].[1]

The concurring justice then tries to distinguish California and Mississippi law by construing California to use aggravating factors that are not aggravating factors at all but, as it were, mere transparent panes through which the evidence may be viewed. He again fails.

It is simply too late in the day for the concurring justice to deny the substantial nature and crucial function of the aggravating factors under California law. Along with the mitigating factors—to quote words he himself used—they provide the "framework for the exercise of [the jury's] discretion" and "assist the jury in placing the particular defendant's conduct in perspective." (*People* v. *Miranda* (1987) 44 Cal.3d 57, 104 [241 Cal.Rptr. 594, 744 P.2d 1127] (per Panelli, J.); accord, *People* v. *Cox* (1991) 53 Cal.3d 618, 674 [280 Cal.Rptr. 692, 809 P.2d 351] [quoting *Miranda*]; see, e.g., *People* v. *Mitcham* (1992) 1 Cal.4th 1027, 1074 [5 Cal.Rptr.2d 230, 824 P.2d 1277] [following *Miranda*]; *People* v. *Haskett* (1990) 52 Cal.3d 210, 230, fn. 5 [276 Cal.Rptr. 80, 801 P.2d 323] (per Panelli, J.) [stating that our aggravating and mitigating factors "statutorily define [the jury's] sentencing function"].)

In sum, the majority and the concurring justice cannot "deconstruct" *Stringer* by denying either the existence of the Eighth Amendment's proscription against vague aggravating factors or its applicability to the California death penalty law. The proscription was common ground for both the majority and the dissenters in *Stringer*. As noted above, all the members of the *Stringer* court recognized both the existence of the proscription and its general applicability to all aggravating factors, whether used for death eligibility or penalty or both. What the majority and the dissenters in

---

[1] I note in passing that the concurring justice's own analysis would make California and Mississippi law substantially indistinguishable in relevant aspect. Under his reasoning, both states would have to be deemed to use aggravating factors in deciding *both* who shall be eligible for the death penalty *and* who shall actually receive the death penalty. He discerns "dual use" in Mississippi because the sentencer there must find at least one aggravating factor before it may actually fix the punishment at death. By parity of reasoning, he must discern "dual use" in California because the sentencer here must effectively find at least one such factor before it may actually fix the punishment at death. (See *People* v. *Brown* (1985) 40 Cal.3d 512, 541-542, fn. 13 [220 Cal.Rptr. 637, 709 P.2d 440], revd. on other grounds *sub nom. California* v. *Brown* (1987) 479 U.S. 538 [93 L.Ed.2d 934, 107 S.Ct. 837].)

*Stringer* disputed was simply whether the proscription amounted to a "new rule" that could not be relied on in a federal habeas corpus proceeding by the petitioner therein, whose judgment became final in 1985. True, the proscription evidently arose with regard to aggravating factors used to determine whether a defendant is eligible for the death penalty. But it has been extended to reach aggravating factors used to determine whether a defendant will actually receive the death penalty.

Neither can the majority or the concurring justice delete *Stringer*'s plain words: "[I]f a State"—like California—"uses aggravating factors in deciding . . . who shall receive the death penalty, it cannot use factors which as a practical matter fail to guide the sentencer's discretion" in contravention of the Eighth Amendment. (*Stringer* v. *Black, supra*, 503 U.S. at p. __ [117 L.Ed.2d at p. 381, 112 S.Ct. at p. 1139].)

Finally, the majority and the concurring justice cannot avoid *Stringer*'s express rationale: "[T]he use of a vague aggravating factor in the weighing process creates the possibility not only of randomness but also of bias in favor of the death penalty . . . ." (*Stringer* v. *Black, supra*, 503 U.S. at p. __ [117 L.Ed.2d at p. 382, 112 S.Ct. at p. 1139].)[2]

---

[2]In an evident attempt to save the aggravating factor comprising "the circumstances of the crime" from invalidity under the Eighth Amendment on the ground of vagueness—an aggravating factor that, strictly speaking, is not before the court—the majority sub silentio overrule *People* v. *Edwards* (1991) 54 Cal.3d 787 [1 Cal.Rptr.2d 696, 819 P.2d 436] 7 (hereafter sometimes *Edwards*), and adopt in its place *People* v. *Tuilaepa* (1992) 4 Cal.4th 569 [15 Cal.Rptr.2d 382, 842 P.2d 1142] (hereafter sometimes *Tuilaepa*), certiorari granted December 6, 1993, *sub nomine Tuilaepa* v. *California*, United States Supreme Court Docket No. 93-5131 [126 L.Ed.2d 563, 114 S.Ct. 598].

In *Edwards*, a majority of this court construed the aggravating factor in question. The *Edwards* majority stated that it "does not mean merely the immediate and spatial circumstances of the crime," but rather "extends to '[t]hat which surrounds materially, morally, or logically' the crime." (*People* v. *Edwards, supra*, 54 Cal.3d at p. 833.) It did not clarify or delimit its construction. Indeed, it expressly declined to "explore [its] outer reaches . . . ." (*Id.* at p. 835.)

It is manifest that this aggravating factor as construed in *Edwards* is vague under the Eighth Amendment. Could a jury—or anyone, for that matter—divine therefrom just what it was required to find in order to impose the death penalty? True, it might believe it must ascertain whether something "surrounded" the crime "materially, morally, or logically." But whether something "surrounds" a crime "materially, morally, or logically" is theoretically indeterminate and practically meaningless. Indeed, it might reach matters such as whether the capital defendant—like defendant here—had been born in the Southern Hemisphere under the astrological sign of Libra.

The Eighth Amendment has invalidated an aggravating factor that the crime was "especially heinous, atrocious, or cruel." (*Maynard* v. *Cartwright, supra*, 486 U.S. at pp. 360-366 [100 L.Ed.2d at pp. 379-383].)

The Eighth Amendment has also invalidated an aggravating factor that the crime was " 'outrageously or wantonly vile, horrible or inhuman.' " (*Godfrey* v. *Georgia, supra*, 446 U.S.

## IV

For all the reasons stated above, although I concur in the judgment, I dissent from my colleagues' erroneous, and insubordinate, declaration that *Stringer* does not apply to the California death penalty law.

---

at pp. 427-433 [64 L.Ed.2d at pp. 405-409] (plur. opn. by Stewart, J.); *id.* at pp. 433-442 [64 L.Ed.2d at pp. 409-415] (conc. opn. of Marshall, J.).)

A fortiori, the Eighth Amendment must invalidate the aggravating factor comprising "the circumstances of the crime" as construed in *Edwards*. If juries are not adequately informed as to what they must find in order to impose the death penalty when they are told to determine whether the crime was "especially heinous, atrocious, or cruel" or "outrageously or wantonly vile, horrible or inhuman," they are not informed *at all* when they are directed merely to " '[t]hat which surrounds materially, morally, or logically' the crime." (*People* v. *Edwards, supra,* at p. 833.)

Little better than *Edwards* is *Tuilaepa*, the decision that the majority rush to embrace as they contemplate the void. In *Tuilaepa*, a majority of this court construed the aggravating factor in question to "direct the sentencer's attention to specific, provable, and commonly understandable facts about the defendant and the capital crime that might bear on his moral culpability." (*People* v. *Tuilaepa, supra,* 4 Cal.4th at p. 595.) What "specific, provable, and commonly understandable facts"? One cannot say. How to determine whether such "facts" "bear on [the defendant's] moral culpability"? Here too, one cannot say.

I do not reach the question whether the majority's overruling of *Edwards*, and their adoption of *Tuilaepa* in its place, are enough to save this aggravating factor from invalidity under the Eighth Amendment on the ground of vagueness. Defendant will no doubt press the issue before the United States Supreme Court on certiorari. In *Arave* v. *Creech* (1993) __ U.S. __, __ [123 L.Ed.2d 188, 200, 113 S.Ct. 1534, 1542], the high court recently held: "If the sentencer fairly could conclude that an aggravating circumstance applies to *every* defendant eligible for the death penalty, the circumstance is constitutionally infirm." (Italics in original.) Apparently, a sentencer could so conclude as to the aggravating factor in question.