[No. D040580. Fourth Dist., Div. One. Jan. 14, 2003.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
GABRIEL JOHN BRADWAY, Real Party in Interest.

## COUNSEL

Paul J. Pfingst, District Attorney, Thomas F. McArdle, Anthony Lovett and Richard S. Armstrong, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Steven J. Carroll, Public Defender, Mark Kirkness, Matthew Braner, and Gary Nichols, Deputy Public Defenders, for Real Party in Interest.

## OPINION

**HUFFMAN, J.**—The People of the State of California petition for a writ of mandate commanding respondent court to vacate its order of May 24, 2002, granting real party in interest Gabriel John Bradway's motion to dismiss the allegation of special circumstances under Penal Code[1] section 190.2, subdivision (a)(15) on grounds the statute, as amended in 2000 by the passage of Proposition 18 (Stats. 1998, ch. 629, § 2, enacted as Prop. 18, approved by voters, Primary Elec. (Mar. 7, 2000) eff. Mar. 8, 2000), is unconstitutionally vague, and to enter a new and different order denying the motion. The question essentially presented is whether the change in the wording of such

---

[1]All statutory references are to the Penal Code unless otherwise specified.

special circumstance due to the 2000 amendment, from murder committed "while" lying in wait to "by means of" lying in wait, renders the special circumstance unconstitutionally vague in violation of the United States Constitution. We answer the question in the negative and issue a writ of mandate to reinstate the lying-in-wait special circumstance for Bradway's trial.

## BACKGROUND AND PROCEDURE

On November 5, 2001, Bradway was charged in a criminal complaint with first degree murder (§ 187, subd. (a)) by personal use of a deadly weapon (§ 12022, subd. (b)(1)) for the death of Julie Kelin on November 1, 2001. An amended complaint filed November 16, 2001, added a special circumstance alleging "lying in wait." (§ 190.2, subd. (a)(15).)

The evidence presented at a January 9, 2002 preliminary hearing showed that on November 1, 2002, Bradway had called 911 to ask for medical assistance for Kelin at her apartment, saying she had a headache and needed to go to the emergency room. Deputy sheriffs responding to the call found Kelin in her apartment bludgeoned and strangled to death. In her bedroom closet, sheriff's detectives found bloody clothing and a hammer with part of its handle sawed off.

Bradway was arrested later that evening, waived his *Miranda*[2] rights and spoke to a detective, telling him he had been planning to kill Kelin for about a month. Bradway said he had arranged, as a ruse, to go to Kelin's apartment to use her computer and pick up his pager, but that his real reason was to kill her. In preparation of such plan, he had sawed off part of the handle of a friend's hammer so he could hide it in his waistband.

When Bradway arrived at Kelin's apartment, she let him in and he made sure he was nice so as to make her feel comfortable. He was in the apartment for 10 to 20 minutes "before he destroyed her." During that time, they walked into the master bedroom to use her computer. When she noticed there was no paper in the printer, she walked to the closet, obtained some, then got down on her knees to place it in the printer which was on the floor. Bradway, who stood behind, and over her, took out the hammer and struck Kelin on the head several times. He "caught her by surprise," but then to his surprise, she fought back. He then threw her on the bed and strangled her with both hands and a telephone cord he wrapped around her neck. Bradway estimated the murder took 30 minutes to complete.

Afterwards, Bradway noticed a large amount of blood on his clothes, so he removed his clothing and placed it inside the master bedroom closet with the

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974].

hammer. He put on a pair of Kelin's jeans and a Padres shirt, and left. He then made the 911 call so Kelin's daughter would not come home from school and discover her mother's body.

In a subsequent search of defendant's apartment, deputies found Kelin's clothing he had worn from her apartment, a pair of bloody socks, and the sawed-off handle to the hammer. Bradway conceded that his actions in making up a false reason for going to Kelin's apartment and making her feel comfortable were "setting the trap."

After hearing this evidence, the magistrate found there was sufficient probable cause to hold Bradway to answer to the murder charge and the deadly weapon use allegation, but declined to make any finding on the lying-in-wait special-circumstance allegation.

On January 28, 2002, Bradway was charged by information with first degree murder and was alleged to have personally used a deadly weapon in committing such crime. In addition the People realleged that the murder was committed under the special circumstance of lying in wait.

On March 8, 2002, Bradway filed a motion to dismiss the lying-in-wait allegation under section 995 on grounds there was insufficient evidence presented at the preliminary hearing to support the allegation, and section 190.2, subdivision (a)(15), as modified by the voters in 2000 through the passage of Proposition 18, is unconstitutionally vague and leads to arbitrary and capricious application of the death penalty in violation of both the Eighth Amendment and due process. The People's response filed on April 8, 2002, addressed only the factual basis for the allegation. Bradway's reply filed May 1, 2002, noted that his constitutional issue was unanswered.

On May 10, 2002, the court heard argument on the motion, deferring any ruling to May 24, 2002. The court, however, tentatively noted it found sufficient evidence to support the lying-in-wait special circumstance, but was having difficulty with the change in language in the special circumstance made by Proposition 18; it did not know whether the fact the first degree murder by lying in wait and the lying-in-wait special circumstance now had the same language would be enough for Bradway to raise an issue of unconstitutional vagueness. The People's position at the hearing was that the matter regarding constitutionality should wait until trial.

Nevertheless, on May 20, 2002, the People filed points and authorities regarding the constitutionality of section 190.2, subdivision (a)(15), asserting Bradway had no standing to contend that section was unconstitutionally

vague or leads to arbitrary and capricious application of the death penalty because the People were not seeking the death penalty in this case. Alternatively, the People argued that Bradway was applying the Eighth Amendment to the lying-in-wait special circumstance too narrowly and that even after the language change brought by Proposition 18, the lying-in-wait special circumstance, which requires the specific intent to kill, remained distinguishable from lying-in-wait first degree murder, which does not contain such requirement.

On May 24, 2002, the court pronounced its ruling in open court and filed its written order, holding there was a sufficient factual basis for the lying-in-wait allegation presented at the preliminary hearing, but that the Proposition 18 amendment had rendered section 190.2, subdivision (a)(15) unconstitutionally vague. In doing so, the court noted the effect of the amendment "was to make the language of the special circumstance identical to the crime of first-degree murder by means of lying in wait as set forth in Penal Code section[s] 187 and 189. The only substantive difference between the two statutes, since the amendment, is that in order for the special circumstance to be applicable it must be proven that the killing was intentional." Then relying on *Houston v. Roe* (9th Cir. 1999) 177 F.3d 901 (*Houston*), which found "the temporal requirement" contained in the special circumstance of lying in wait as explained in *Domino v. Superior Court* (1982) 129 Cal.App.3d 1000 [181 Cal.Rptr. 486] (*Domino*)[3] saved the circumstance from being unconstitutionally vague (*Houston, supra*, 177 F.3d at pp. 907-908), the court found the lack of such requirement after the 2000 amendment to be insufficient to give fair notice of what the lying-in-wait special circumstance prohibits or to provide definite guidelines to prevent " 'arbitrary and discriminatory enforcement.' [Citation.]" The court determined it could not find a "meaningful distinguishable line between first degree murder lying in wait and special circumstances lying in wait" in cases where a person has the intent to murder and does so by means of lying in wait. The court indicated it found no direction in the statute to assist in the decision of choosing to subject a person to the death penalty, and found that the amendment to section 190.2, subdivision (a)(15) made it unconstitutionally vague. Based on such ruling, the court granted Bradway's motion to dismiss the lying-in-wait special- circumstance allegation.

The People filed a notice of appeal from the order dismissing the lying-in-wait special circumstance on July 29, 2002. (*People v. Bradway* (July 29,

---

[3]The court in *Domino* found the term "while" in the lying-in-wait special-circumstance statute required the killing take place "during the period of concealment and watchful waiting or the lethal acts must begin at and flow continuously from the moment the concealment and watchful waiting ends" and thus provided a temporal difference from first degree murder by lying in wait, which only requires the killing be committed "as a means of" lying in wait. (*Domino, supra*, 129 Cal.App.3d at p. 1011.)

2002, D040591) [nonpub. opn.].) On August 5, 2002, the People filed the instant petition for writ of mandate, claiming the appeal is inadequate because it would require retrial on the special circumstance allegation. Finding the petition raises an important question, which is likely to recur, on September 4, 2002, we issued an order to show cause why the relief requested in the petition should not be granted and set a briefing schedule for the formal return and reply. Subsequently we have abated the appeal, stayed the December 9, 2002 trial date pending further order of this court, and heard oral argument.

## DISCUSSION

Before considering the essential question raised by this petition, i.e., whether the change in the wording of section 190.2, subdivision (a)(15) made by Proposition 18 in 2000, from murder committed "while" lying in wait to "by means of" lying in wait, renders the special circumstance unconstitutionally vague in violation of the United States Constitution, we set out a brief summary of murder, "lying in wait," and the death penalty scheme in California.

Section 187, subdivision (a) defines murder as the unlawful killing of another human being or a fetus, with malice aforethought. ■ Murder has been separated into degrees because "some murders can more easily be prevented than others by the deterrent effect of severe penalties [and because] society draws a *moral* distinction between murderers: as morally wrong as murder per se is, some murders are more deplorable than others. Society instinctively senses a greater revulsion for a calculated, deliberate murder than it does for any other type of killing. . . . Only by appropriately circumscribing the application of first degree murder can society preserve that pervasive moral distinction." (*People v. Steger* (1976) 16 Cal.3d 539, 545 [128 Cal.Rptr. 161, 546 P.2d 665, 83 A.L.R.3d 1206].)

Section 189, which defines first degree murder, provides in pertinent part: "All murder which is perpetrated *by means of* a destructive device or explosive, a weapon of mass destruction, knowing use of ammunition designed primarily to penetrate metal or armor, poison, *lying in wait*, torture, or by any other kind of willful, deliberate, and premeditated killing, or which is committed in the perpetration of, or attempt to perpetrate, arson, rape, carjacking, robbery, burglary, mayhem, kidnapping, train wrecking, or any act punishable under Section 206, 286, 288, 288a, or 289, or any murder which is perpetrated by means of discharging a firearm from a motor vehicle, *intentionally at another person outside of the vehicle with the intent to inflict death*, is murder of the first degree. All other kinds of murders are of the second degree." (Italics added.)

Murder committed by means of lying in wait "has been 'anciently regarded . . . as a particularly heinous and repugnant crime.' [Citation.]" (*People v. Edelbacher* (1989) 47 Cal.3d 983, 1023 [254 Cal.Rptr. 586, 766 P.2d 1] (*Edelbacher*).) Because the moral culpability of such an offender "justifies fixing the murder in the first degree" (*People v. Stanley* (1995) 10 Cal.4th 764, 795 [42 Cal.Rptr.2d 543, 897 P.2d 481] (*Stanley*), the inclusion of lying in wait as a statutory means that shows " 'willful, deliberate, and premeditated killing' " and its use as the "functional equivalent of proof of premeditation" has continually been upheld against constitutional challenges. (*Id.* at pp. 793-796; see also *People v. Rodriguez* (1998) 66 Cal.App.4th 157, 163 [77 Cal.Rptr.2d 676] (*Rodriguez*).)

In order to prove a defendant guilty of first degree murder under a theory of lying in wait, the prosecution needs to present evidence from which the jury can find the defendant has "perpetrated [an unlawful killing with malice aforethought] by means of . . . lying in wait." (§§ 187, 189; *Stanley, supra*, 10 Cal.4th at p. 794.) CALJIC No. 8.25 defines the term "lying in wait" as "a waiting and watching for an opportune time to act, together with a concealment by ambush or by some other secret design to take the other person by surprise [even though the victim is aware of the murderer's presence]. The lying in wait need not continue for any particular period of time provided that its duration is such as to show a state of mind equivalent to premeditation or deliberation."

Once a defendant is found guilty of first degree murder, he is exposed to three possible penalties: death, life imprisonment without possibility of parole (LWOP), or a 25-year-to-life prison term (§ 190, subd. (a)). However, the sentencing options are reduced when special circumstances are alleged under California's capital punishment scheme (codified in section 190.2) and found true. (*Rodriguez, supra*, 66 Cal.App.4th at p. 164.) Section 190.2 provides "[t]he penalty for a defendant who is found guilty of murder in the first degree is death or imprisonment in the state prison for life without the possibility of parole if one or more of the following [22] special circumstances has been found under Section 190.4 to be true. . . ." This statutory scheme has been held to comport with the requirements of the Eighth Amendment to sufficiently narrow the class of persons eligible for the death penalty and to afford some objective basis for distinguishing cases in which the death penalty has been imposed from the many cases in which it has not. (*People v. Bacigalupo* (1993) 6 Cal.4th 457, 465 [24 Cal.Rptr.2d 808, 862 P.2d 808], citing *Zant v. Stephens* (1983) 462 U.S. 862, 878 [103 S.Ct. 2733, 2743, 77 L.Ed.2d 235]; *Godfrey v. Georgia* (1980) 446 U.S. 420, 433 [100 S.Ct. 1759, 1767, 64 L.Ed.2d 398]; see also *People v. Musselwhite* (1998) 17 Cal.4th 1216, 1266-1269 [74 Cal.Rptr.2d 212, 954 P.2d 475].) Section

190.2, subdivision (a)(15) defines the special circumstance of lying in wait, the one at issue in this case.

Up until March 8, 2000, section 190.2, subdivision (a)(15) provided it was a special circumstance if "[t]he defendant intentionally killed the victim *while* lying in wait." (Italics added.) In order to support such a special circumstance, the prosecutor had to prove that an intentional killing was actually "committed while lying in wait" in addition to the other requirements for first degree murder by lying in wait. (§ 190.2, former subd. (a)(15); see CALJIC No. 8.81.15.) Case law has construed the meaning of lying in wait to include not only killings from ambush, but also murders in which the killer's purpose was concealed (*People v. Morales* (1989) 48 Cal.3d 527, 557 [257 Cal.Rptr. 64, 770 P.2d 244] (*Morales*); *People v. Sims* (1993) 5 Cal.4th 405, 432 [20 Cal.Rptr.2d 537, 853 P.2d 992]); has found the "substantial" watching and waiting period need only be minutes (*People v. Edwards* (1991) 54 Cal.3d 787, 825-826 [1 Cal.Rptr.2d 696, 819 P.2d 436] (*Edwards*)); and has found that "watching and waiting" also includes alertly waiting for a victim's arrival (*Sims, supra,* 5 Cal.4th at p. 433). As our Supreme Court noted in *Morales, supra,* 48 Cal.3d 527: "an intentional murder, committed under circumstances which include (1) a concealment of purpose, (2) a substantial period of watching and waiting for an opportune time to act, and (3) immediately thereafter, a surprise attack on an unsuspecting victim from a position of advantage, presents a factual matrix sufficiently distinct from 'ordinary' premeditated murder to justify treating it as a special circumstance." (*Id.* at p. 557.) Once such is shown, it is "properly among the kinds of aggravated killing which justify society's most severe penalty." (*Id.* at p. 558.)

However, as the Supreme Court in *People v. Ceja* (1993) 4 Cal.4th 1134 [17 Cal.Rptr.2d 375, 847 P.2d 55] stressed, although lying in wait as a form of first degree murder and the special circumstance of lying in wait overlap to an extent, they are different because the special circumstance requires an intentional killing "while" lying in wait rather than "by means of " lying in wait. (*Id.* at p. 1140, fn. 2.) Lying-in-wait murder does not have an intentional murder requirement (*ibid*); rather it only requires wanton and reckless intent to inflict injury likely to cause death. (*People v. Webster* (1991) 54 Cal.3d 411, 448 [285 Cal.Rptr. 31, 814 P.2d 1273] (*Webster*).)

In a challenge to the sufficiency of the evidence to support the lying-in-wait special circumstance added to the Penal Code by California's 1978 Death Penalty Initiative (Prop. 7, Gen. Elec. (Nov. 7, 1978)), the majority in *Domino, supra,* 129 Cal.App.3d 1000, found the word "while" in the special circumstances definition of lying in wait indicated a closer temporal proximity than required for first degree murder lying in wait, which used the

words " 'perpetrated by means of . . . lying in wait.' " (*Id.* at pp. 1011-1012.) The majority assumed that the "drafters [of the lying-in-wait special circumstance] were aware of the wording of Penal Code section 189 and that they deliberately chose different words." (*Domino, supra*, 129 Cal.App.3d at p. 1010.) They thus interpreted the special circumstance of lying in wait to require that "the killing . . . take place during the period of concealment and watchful waiting or the lethal acts must begin at and flow continuously from the moment concealment and watchful waiting ends. If a cognizable interruption separates the period of lying in wait from the period during which the killing takes place, the circumstances calling for the ultimate penalty do not exist." (*Id.* at 1011, fn. omitted.) Based on such construction, the majority found the facts that the victim was captured during the lying in wait period, but was killed one to five hours later, were insufficient to support the special circumstance. (*Id.* at p. 1012.)

In a concurring and dissenting opinion, Justice Barry-Deal strongly disagreed with the striking of the lying-in-wait special circumstance. (*Domino, supra*, 129 Cal.App.3d at p. 1012.) Justice Barry-Deal stated: "Although the complete text of the special circumstance provision uses the terminology, '[t]he defendant intentionally killed the victim while lying in wait,' the operative words are 'intentionally killed' and 'lying in wait.' The intent of the initiative proponents was to make the new death penalty law (Pen. Code, § 190.2) applicable to types of murder which had not been covered by the prior law, one of which was murder 'perpetrated by means of . . . lying in wait' (Pen. Code, § 189). The mere happenstance that the word 'while' was used to designate a 'lying-in-wait' murder does not reveal an intention that a different body of law arise under the 'lying-in-wait' special circumstance." (*Ibid.*)

Justice Barry-Deal found the purpose of the initiative clear, that it did not violate the federal Constitution, and was greatly troubled "because legislation passed by initiative may not be amended or repealed except by a vote of the electors" which would require a new initiative to change the word "while" to "by means of" to correct the limiting judicial construction by the majority. (*Domino, supra*, 129 Cal.App.3d at p. 1012 (con. & dis. opn. of Barry-Deal, J.).)

Proposition 18, adopted by the voters on March 7, 2000, changed the word "while" in the lying-in-wait special circumstance to "by means of" so that it would conform with the lying-in-wait language defining first degree murder to essentially eliminate the immediacy requirement that case law had placed on the special circumstance. (See Ballot Pamp., Primary Elec. (Mar. 7, 2000) Legis. Analyst's analysis of Prop. 18, p. 33; Chief Counsel, Rep. on

Sen. Bill No. 1878 (1997-1998 Reg. Sess.) to Assem. Com. on Public Safety, June 23, 1998 hearing, pp. 10-11.) The Legislative Analyst's analysis of Proposition 18 in the ballot pamphlet noted that the courts had "generally interpreted [while lying in wait] to mean that, in order to qualify as a special circumstance, a murder must have occurred immediately upon a confrontation between the murderer and the victim. The courts have generally interpreted this provision to rule out a finding of a special circumstance if the defendant waited for the victim, captured the victim, transported the victim to another location, and then committed the murder." (Ballot Pamp., Primary Elec., *supra*, Legis. Analyst's analysis of Prop. 18, p. 33.) The analysis further stated: "This measure amends state law so that a case of first degree murder is eligible for a finding of a special circumstance if the murderer intentionally killed the victim 'by means of lying in wait.' In so doing, this measure replaces the current language establishing a special circumstance for murders committed 'while lying in wait.' This change would permit the finding of a special circumstance not only in a case in which a murder occurred immediately upon a confrontation between the murderer and the victim, but also in a case in which the murderer waited for the victim, captured the victim, transported the victim to another location, and then committed the murder." (*Ibid.*)

In the June 23, 1998 report on Senate Bill No. 1878 by chief counsel to the Assembly Committee on Public Safety, it was noted that in *Morales, supra,* 48 Cal.3d 527 and *Edelbacher, supra,* 47 Cal.3d 983, our Supreme Court had stated that as a constitutional matter an intentional killing committed by means of lying in wait was a valid basis to impose the death penalty and that in *Edelbacher* had held that first degree murder committed by means of lying in wait where the murder was committed with an intent to kill was a valid basis alone to impose the death sentence. (Chief Counsel, Rep. on Sen. Bill No. 1878 (1997-1998 Reg. Sess.) to Assem. Com. on Public Safety, June 23, 1998 hearing, p. 10.) The report recognized the language of "while" in the special circumstance of lying in wait had been interpreted by the court in *Domino, supra,* 129 Cal.App.3d 1000, to require the murder be committed during the time the person was lying in wait, that such view had been accepted by our Supreme Court, and that such current distinction between "the category of first-degree murder and the special circumstance has caused substantial confusion, particularly in the area of jury instructions." (Chief Counsel, Rep. on Sen. Bill No. 1878 (1997-1998 Reg. Sess.) to Assem. Com. on Public Safety, June 23, 1998 hearing, p. 10.) The report thus recommended the change in the language in the lying-in-wait special circumstance to conform to that in section 189. (*Ibid.*)

With this background in mind, we return to the question of whether the trial court improperly found the change in the lying-in-wait special

circumstance language brought about by Proposition 18 rendered it unconstitutionally vague and therefore void. ■ Generally, there are two separate and distinct legal theories for challenging a statute on vagueness grounds, depending on the interests at stake. (*Maynard v. Cartwright* (1988) 486 U.S. 356, 361-362 [108 S.Ct. 1853, 1857-1858, 100 L.Ed.2d 372].) A person challenging aggravating circumstance statutes in death penalty cases brings such under the Eighth Amendment, asserting "the challenged provision fails adequately to inform juries what they must find to impose the death penalty and as a result leaves them and appellate courts with . . . open-ended discretion . . . ." (*Ibid.*) In noncapital cases, the challenge comes under the due process clause and "rest[s] on the lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk." (*Id.* at p. 361 [108 S.Ct. at p. 1857].) Where there is no First Amendment right implicated, such due process challenges "are examined in light of the facts of the case at hand; the statute is judged on an as-applied basis." (*Ibid.*)

■ Here, because Bradway no longer faces the death penalty, and no First Amendment rights are implicated, we merely examine the statute as applied to him under the facts of the instant case. (*Maynard v. Cartwright, supra,* 486 U.S. at pp. 361-362 [108 S.Ct. at pp. 1857-1858].) Such facts show that Bradway decided to kill his victim, established a ruse to take her by surprise, prepared a weapon he could conceal when he went to her home under the ruse, where he watched and waited for an opportune time to strike his unsuspecting victim from a position of advantage, and when she kneeled on the floor with her back to him, did so strike her according to his plan. As the trial court correctly found, the facts satisfied the terms of the newly amended lying-in-wait special circumstance.

Nonetheless, the court found the new statute unconstitutionally vague because it felt there was no longer any cognizable way to differentiate between an intentional first degree murder committed by means of lying in wait and murder with the special circumstance of lying in wait. To the extent the court was concerned that both would have the same elements, and therefore failed to narrow the class of persons eligible for the death penalty or an LWOP term, its reasoning was flawed. A careful reading of the case law explaining first degree murder by means of lying in wait and the lying-in-wait special circumstance, as well as the legislative history for Proposition 18, reveal that even after Proposition 18 changed the language of the lying-in-wait special circumstance to comport with the language of first degree murder "by means of" lying in wait, the special circumstance remains distinguishable because it still requires the specific intent to kill, whereas first degree murder by lying in wait does not. (See *Webster, supra,* 54 Cal.3d

at p. 448; CALJIC No. 8.81.15.1 (2000 new) (6th ed. 1996).) The special circumstance under section 190.2, subdivision (a)(15) therefore does not merely repeat the elements that make a killing by means of lying in wait a first degree murder. (See *People v. Catlin* (2001) 26 Cal.4th 81, 158 [109 Cal.Rptr.2d 31, 26 P.3d 357] [murder by poison special circumstance upheld as constitutional even though same elements as first degree murder by means of poison repeated along with requirement of specific intent to kill].) In addition, it has long been held that "first degree murder liability and special circumstance findings may be based upon common elements without offending the Eighth Amendment. (*People v. Marshall* (1990) 50 Cal.3d 907, 945-946 [269 Cal.Rptr. 269, 790 P.2d 676] . . . ; *Lowenfield v. Phelps* (1988) 484 U.S. 231, 242-246. [108 S.Ct. 546, 552-555, 98 L.Ed.2d 568].)" (*Ibid.*)

■ As for the court's finding that the amended section 190.2, subdivision (a)(15) does not provide sufficient notice of what conduct is prohibited and fails to provide guidelines to prevent arbitrary and discriminatory enforcement, its reasoning is likewise suspect. Section 190.2, subdivision (a)(15) provides a clear definition of what is required to satisfy its elements. In addition to the elements of lying in wait, which are now the same as for first degree murder, a person must specifically intend to kill "by means of lying in wait." Any reasonable person considering Bradway's conduct, or planning similar acts, would know that those acts constituted murder by means of lying in wait and that the special circumstance could be alleged if the person in addition specifically intended to kill his victim by such means.

As for guidelines to prevent arbitrary and discriminatory enforcement, the statute is clear as to what conduct would subject a person to possible punishment by death or LWOP. Generally, where the facts support a special circumstance allegation, the prosecutor has the discretion to seek the death penalty. ■ Such " '[p]rosecutorial discretion to select those eligible cases in which the death penalty will actually be sought does not in and of itself evidence an arbitrary and capricious capital punishment system or offend principles of . . . due process, or cruel and/or unusual punishment.' [Citations.]" (*People v. Arias* (1996) 13 Cal.4th 92, 189 [51 Cal.Rptr.2d 770, 913 P.2d 980].) ■ If so charged, the jury would then have to make a specific finding on the special circumstance before a penalty phase could be held for determining whether a defendant were to be sentenced to death or receive LWOP. At that time the jury would have certain sentencing factors to consider in making such decision. The United States Supreme Court has upheld this procedure against claims it does not provide a meaningful basis for distinguishing the few murder cases in which death may be imposed from those in which it is not, and that it does not define those

factors or properly guide the jury's sentencing discretion. (*Tuilaepa v. California* (1994) 512 U.S. 967 [114 S.Ct. 2630, 129 L.Ed.2d 750]; see *Arias, supra*, 13 Cal.4th at pp. 186-188.)

Moreover, the trial court's reliance on *Houston, supra*, 177 F.3d 901, a federal circuit case, to find the amended lying-in-wait special-circumstance statute invalid as unconstitutionally vague is questionable. Although the temporal distinction made by the majority in *Domino, supra*, 129 Cal.App.3d 1000, between the terms "by means of" in the lying-in-wait murder and "while" in the lying-in-wait special circumstance relied upon by the court in *Houston* for its holding has been recognized by our Supreme Court, the correctness of such distinction or "the validity of *Domino*'s restrictive interpretation of the special circumstance provision" has not. (*Morales, supra*, 48 Cal.3d at p. 558; see *Edwards, supra*, 54 Cal.3d at p. 826; *Edelbacher, supra*, 47 Cal.3d at p. 1022.) Nor need we reach the issue in this case, as the statute as amended, when reviewed in light of the existing settled law in California still requires the distinguishing element of intentional murder, "thus eliminating murders where only implied malice has been established. [Citation.]" (*Edelbacher, supra*, 47 Cal.3d at p. 1023.) Such "'principled way to distinguish this case' from other first degree murders . . . comports with the Eighth Amendment requirements" of narrowing the class of murders for which death may be imposed. (*Ibid.*)

Having determined that the trial court erred in determining section 190.2, subdivision (a)(15) as amended by Proposition 18 in 2000 is unconstitutionally vague as applied to Bradway, a writ of mandate is proper to reinstate such special circumstance for Bradway's trial for the murder of Julie Kelin.

### DISPOSITION

Let a writ of mandate issue directing the Superior Court of San Diego to vacate its order of May 24, 2002, granting Bradway's motion to dismiss the allegation of special circumstances under section 190.2, subdivision (a)(15) and to enter a new and different order denying the motion. The stay of the trial in this matter is vacated forthwith.

O'Rourke, J., concurred.

**McDONALD, Acting P. J.,** Dissenting.—In my view the adoption of Proposition 18, which eliminated the temporal distinction between lying in wait as a means of establishing premeditation for first degree murder (Pen.

Code, § 189)[1] and lying in wait as a special circumstance permitting imposition of the death penalty (§ 190.2, subd. (a)(15)), brought to fruition the concern Justice Kennard expressed in her concurring opinion in *People v. Ceja* (1993) 4 Cal.4th 1134, 1146-1147 [17 Cal.Rptr.2d 375, 847 P.2d 55] (conc. opn. of Kennard, J.). In her opinion, Justice Kennard stated: "Unlike first degree murder perpetuated by lying in wait, the lying-in-wait special circumstance must provide a meaningful basis for distinguishing capital and noncapital cases, so that the death penalty will not be imposed in an arbitrary or irrational manner. [Citation.] Recent decisions of this court have given expansive definitions to the term 'lying in wait,' while drawing little distinction between 'lying in wait' as a form of first degree murder and the lying-in-wait special circumstance, which subjects a defendant to the death penalty. [Citations.] Constrained by the principle of stare decisis, I concurred in the more recent of these decisions, which were reached after I joined this court. I have a growing concern, however, that these decisions may have undermined the critical narrowing function of the lying-in-wait special circumstance: to separate defendants whose acts warrant the death penalty from those defendants who are 'merely' guilty of first degree murder." (*Id.* at p. 1147.)

The most recent declaration of the California Supreme Court of the distinction between lying-in-wait first degree murder and the lying-in-wait special circumstance appears in *People v. Gutierrez* (2002) 28 Cal.4th 1083, 1148-1149 [124 Cal.Rptr.2d 373, 52 P.3d 572]. The *Gutierrez* decision rejected a constitutional challenge to the lying-in-wait special circumstance as it existed before the adoption of Proposition 18. The court identified the two distinguishing characteristics between lying-in-wait first degree murder and the lying-in-wait special circumstance as follows: "[(1)] '[M]urder by means of lying in wait requires only a wanton and reckless intent to inflict injury likely to cause death' [and] [i]n contrast, the lying-in-wait special circumstance requires 'an intentional murder' [; and (2)] the lying-in-wait special circumstance requires 'that the killing take place *during the period of concealment and watchful waiting,* an aspect of the special circumstance distinguishable from a murder perpetrated by means of lying in wait . . . .' " (*Id.* at pp. 1148-1149.) Proposition 18 removed the temporal distinction referred to by the Supreme Court in *Gutierrez.* The issue in the instant petition therefore is whether the alternate distinction referred to by the Supreme Court, which is the intent to kill relied on by the majority opinion in this case, is sufficient to satisfy the Eighth Amendment and due process, which require a meaningful narrowing of the circumstances for which the death penalty may be imposed from the circumstances for which it

---

[1]All statutory references are to the Penal Code unless otherwise specified.

may not be imposed. (See *People v. Edelbacher* (1989) 47 Cal.3d 983, 1023 [254 Cal.Rptr. 586, 766 P.2d 1].)

The sole current distinction between murder by means of lying in wait (§ 189) and the special circumstance of lying in wait (§ 190.2, subd. (a)(15)) is purported to be that the latter requires the defendant intentionally killed the victim and the former requires that the defendant either intentionally killed the victim (express malice) or the killing resulted from the defendant's intentional act, the consequences of which are dangerous to human life and was performed with knowledge of and with conscious disregard for human life (implied malice). (See CALJIC Nos. 8.25, 8.81.17.1, 8.10, 8.11.)

Although superficially it appears that the distinction between lying-in-wait murder, which purportedly requires express or implied malice, and the lying-in-wait special circumstance, which requires express malice, is a meaningful distinction, on closer examination it is my view that because the definition of lying in wait is identical for both, there is no distinction. Both lying-in-wait murder and the lying-in-wait special circumstance incorporate the identical definition of lying in wait. As set forth in CALJIC Nos. 8.25 and 8.81.15.1, "The lying in wait need not continue for any particular period of time provided that its duration is such as to show a state of mind equivalent to premeditation or deliberation. [¶] The word 'premeditation' means considered beforehand. [¶] The word 'deliberation' means formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action." Therefore to establish either lying-in-wait murder or the lying-in-wait special circumstance, the defendant must be proved to have acted with premeditation and deliberation. As stated by the Supreme Court, "lying in wait as a theory of murder is 'the functional equivalent of proof of premeditation, deliberation and intent to kill.' (*People v. Ruiz* [(1988)] 44 Cal.3d [589,] 614 [244 Cal.Rptr. 200, 749 P.2d 854], and cases cited; see § 189); hence, 'a showing of lying in wait obviates the necessity of separately proving premeditation and deliberation . . . .' [Citation.]" (*People v. Gutierrez, supra,* 28 Cal.4th at p. 1149, fn. 10.) If by definition lying in wait as a theory of murder is the equivalent of an intent to kill, and lying in wait is defined in the identical manner in the lying-in-wait special circumstance, then both must include the intent to kill and there is no meaningful distinction between them. The statement that lying-in-wait murder requires only implied malice appears incorrect because the concept of lying in wait is the functional equivalent of the intent to kill.

As a result of Proposition 18's deletion of the temporal requirement of lying in wait as a special circumstance under section 190.2, subdivision

(a)(15), there remains in my view no situation in which the lying-in-wait special circumstance for the death penalty is narrower than for lying-in-wait murder. I therefore agree with the trial court that the section 190.2, subdivision (a)(15) allegation of the special circumstance of lying in wait in this case should have been stricken and I would deny the petition for extraordinary writ.

On January 16, 2003, the opinion was modified to read as printed above. The petition of real party in interest for review by the Supreme Court was denied April 9, 2003. Kennard, J., Werdegar, J., and Moreno, J., were of the opinion that the petition should be granted.