Filed 12/2/20  P. v. Jones CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JERMAINE JONES,<br><br>        Defendant and Appellant. | A155649<br><br>(San Mateo County<br>Super. Ct. No. SC081953A)<br><br>**ORDER MODIFYING OPINION AND DENYING REHEARING [NO CHANGE IN JUDGMENT]** |

**BY THE COURT:**

It is ordered that the opinion filed herein on November 10, 2020, be modified as follows:

1.     On page 5, the sentence beginning "Jones relies on cases . . ." and the citations that follow it are deleted and replaced with the following:

> Jones relies on capital cases holding that "[t]o comply with the Eighth Amendment, a state's capital punishment scheme must include an ' "objective basis for distinguishing" ' a capital case from a noncapital case.  (*People v. Crittenden* (1994) 9 Cal.4th 83, 154; see *Godfrey v. Georgia* (1980) 446 U.S. 420, 433; *People v. Casares* (2016) 62 Cal.4th 808, 848–853; *People v. Catlin* (2001) 26 Cal.4th 81, 157–159.)

2.     On pages 7 and 8, the following sentence is deleted:  "But Jones has not asserted any void-for-vagueness claim under the due process clause." That sentence is replaced with the following:

But Jones does not argue that section 190.2, subdivision (a)(21) is not "definite enough to provide a standard of conduct for those whose activities are proscribed," or that it fails to "provide definite guidelines for the police in order to prevent arbitrary and discriminatory enforcement," as a void-for-vagueness claim under the due process clause requires. (*People v. Heitzman* (1994) 9 Cal.4th 189, 199.)

These modifications do not change the judgment.

The petition for rehearing is denied.


Dated: _____          _____, Acting P.J.

2

Filed 11/10/20  P. v. Jones CA1/2 (unmodified opinion)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br>v.<br>JERMAINE JONES,<br>　　　　Defendant and Appellant. | A155649<br><br>(San Mateo County<br>Super. Ct. No. SC081953A) |

　　　　In August of 2011, Carl Purvis, Jr. was shot and killed while driving his car in East Menlo Park.  A jury convicted defendant Jermaine Jones of first-degree murder, and found true the special circumstance that Jones intentionally murdered Purvis by shooting a firearm from a motor vehicle.  Jones argues that the special circumstance finding must be reversed because it duplicated the prosecution's theory of first-degree murder, and that the trial court erred in refusing to instruct the jury on imperfect self-defense, in admitting certain firearms evidence, and in limiting his counsel's cross-examination of a prosecution witness.  We affirm.

## BACKGROUND

　　　　Around 2:00 a.m. on the morning of June 4, 2011, two masked men put a gun to Jones's head, took his car keys, and stole his car—a red, four-door Chrysler with "comb rims."  Jones called 911 and told the dispatcher that he did not know the men, but asked police to check for the car on Alberni street

1

in East Palo Alto. Jones's girlfriend at the time, Kimberly Brown, would later testify that Jones told her that Purvis (known as "Man Man") was one of the carjackers, and a "hater" who "hat[ed] on [Jones] every time [Jones] went over to Alberni Street," where Purvis lived. Later that morning, police recovered the car and returned it to Jones.

On August 18, 2011, around 6:00 p.m., Jose Juan Lopez saw what he described as a "red candy"-colored Chrysler—which he later identified as Jones's car—following a Pontiac Grand Am on Plumas Avenue in Menlo Park. A surveillance camera from a nearby house also captured Jones's car following Purvis's car.

At around 5:55 p.m., Mariela Gonzalez saw Purvis's car come to a stop at the intersection of Almanor Avenue and Newbridge Street. She then saw Jones's car, driven by an African-American man with "little to no hair and a little heavier-set than the other driver," pull up next to it. The driver of Jones's car then fired two shots at Purvis's car, and then Jones's car "sped off really fast." Purvis's car stopped on the sidewalk in front a nearby church. Purvis was later pronounced dead at the scene.

On the night of August 22, Jones's car was towed from an address on Shropshire Court in Stockton, and released back to Jones the next day. On August 23, Stockton police conducted a stop of the car and arrested Jones for Purvis's murder. Jones had two cell phones and a wallet on his person when he was arrested. An August 19 newspaper article about Purvis's murder was subsequently found in the wallet.

In a search of Jones's car, a .45-caliber Springfield Armory XD45LE handgun was found under the hood and under the air filter. Analysis of the gun later determined that it had Jones's fingerprints, palm print, and DNA

2

on it.  Ballistic analysis also determined that the gun had fired bullets recovered from Purvis's body, as well as the door and floorboard of his car.

A data extraction from an HTC brand phone that Jones had when he was arrested produced several images of Jones holding what appeared to be the Springfield Armory XD45LE handgun, as well as various firearm related searches performed on August 16, including two related to a Springfield Armory XD45 handgun.

On October 16, 2014, an amended indictment was filed charging Jones with the murder of Purvis (Pen. Code, § 187)[1] (count 1), shooting at an occupied vehicle (§ 246) (count 2), and possessing a firearm as a felon (§ 29800, subd. (a)(1)) (count 3).  With respect to count 1, the indictment further alleged the special circumstance that Jones intentionally murdered Purvis by shooting a firearm from a motor vehicle (§§ 190, subd. (d), 190.2, subd. (a)(21)) and that Jones personally and intentionally discharged a firearm causing death (§ 12022.53, subd. (d)).  The information also alleged a prior serious felony conviction (§§ 667, subd. (a), 1170.12, subd. (c)(1)), and three prior prison terms (§ 667.5, subd. (b)).

Trial took place in February and March of 2018.

The prosecution argued that Jones was guilty of first-degree murder under two theories—that he premeditated and deliberated before shooting Purvis, and that he committed the murder by shooting a firearm from a motor vehicle.  (See § 189, subd. (a).)

Jones testified in his own defense.  According to Jones, a man named "Dollar" had previously expressed interest in buying his car, and on August 16, had offered to give him a gun and a large quantity of ecstasy pills in

---

[1] Further undesignated statutory references are to the Penal Code.

exchange for the car, and had searched on Jones's cell phone for the gun to see how much it was worth. On the day of the shooting, Dollar came to his door with the gun and Jones took pictures with it. Later that day, around 5:00 p.m., Jones went to the house of a man known as "Stag" and saw Dollar again; Dollar asked to test drive the car and was gone about 45 minutes. When he returned, he told Jones: "Me and that nigga whip it hard.[2] Just got on somebody."

Jones also introduced evidence, including the testimony of Menlo Park police officer Nicholas Douglas and a letter written by Brian Seefeldt, Wilbert Ard's cellmate in jail, that Ard had confessed to Seefeldt that he had killed Purvis because Purvis betrayed the Taliban gang, to which they both belonged, and was going to inform the FBI about the gang's plan to kill federal judges.[3]

On March 9, the jury found Jones guilty on all three counts and found true the firearm enhancement and drive-by special circumstance allegations. On August 31, the trial court found true the prior conviction allegations.

On October 19, the trial court sentenced Jones to life without the possibility of parole on count 1, five years on count 2 which was imposed and stayed under section 654, and two years on count 3, doubled to four years as a second strike. The court imposed the 25 year to life section 12022.53, subdivision (d) enhancement on count 1 and stayed it on count 2, and

---

[2] The transcript reflects that Jones said "whip it hard," but on cross-examination Jones clarified that he said "Wilbert Ard."

[3] Seefeldt was a witness for the defense, who testified he had suffered a head injury in 2007 that caused problems with his long-term memory and that he did not remember anything about many of the events in question.

4

imposed five years on the prior felony (§ 667, subd. (a)), for a total sentence of life without possibility of parole plus 34 years to life.

Jones appeals.

## DISCUSSION

Jones argues that (1) the special circumstance finding should be reversed because it duplicates the requirements for drive-by first-degree murder; (2) the trial court erred in failing to instruct on imperfect self-defense; (3) the trial court erred in admitting certain firearms evidence; (4) the trial court erred in prohibiting defense counsel from asking a prosecution witness if the victim had previously shot her brother; and (5) the cumulative effect of these errors requires reversal.

## I.     *The Eighth Amendment's "Narrowing" Requirement Does Not Apply Because Jones Was Not Sentenced to Death*

Jones's first argument is that the special circumstance finding must be reversed because it is requires the same elements as the prosecution's drive-by theory of first-degree murder, and thus fails to satisfy the "narrowing" requirement of the Eighth Amendment. (See §§ 189, subd. (a), 190.2, subd. (a)(21); CALCRIM Nos. 521, 735.) Jones relies on cases holding that "[t]o comply with the Eighth Amendment, a state's capital punishment scheme must include an ' "objective basis for distinguishing" ' a capital case from a noncapital case. (*People v. Crittenden* (1994) 9 Cal.4th 83, 154; see *Godfrey v. Georgia* (1980) 446 U.S. 420, 433.) 'A legislative definition lacking "some narrowing principle" to limit the class of persons eligible for the death penalty and having no objective basis for appellate review is deemed to be impermissibly vague under the Eighth Amendment.' (*People v. Bacigalupo* (1993) 6 Cal.4th 457, 465.)" (*People v. Arce* (2020) 47 Cal.App.5th 700, 711.)

5

The Attorney General argues that Jones has waived his Eighth Amendment argument because he did not raise it before the trial court. However, because Jones also argues that his counsel was ineffective in failing to object to his sentence under the Eighth Amendment, we will reach—and reject—the argument on the merits. Indeed, as Jones acknowledges, his argument has already been rejected in *People v. Rodriguez* (1998) 66 Cal.App.4th 157, 164 (*Rodriguez*):

"Defendant initially suggests that section 190.2[, subdivision] (a)(21) contains a constitutional infirmity simply because it duplicates the elements which defined defendant's murder as, or 'elevated' it to, first degree murder by way of the third category defined in section 189.[4] This suggestion, however, has already been decided to have no merit, and we therefore need not consider it further. (*Lowenfield v. Phelps* (1987) 484 U.S. 231[, 246] [special circumstance of multiple murder may duplicate elements defining defendant's crime as first degree murder]; *People v. Edelbacher* (1989) 47 Cal.3d 983, 1023, fn. 12 [rejecting suggestion of similar argument regarding 'lying in wait' special circumstance].)"

Jones acknowledges that *Rodriguez*, and the cases on which it relied, rejected his argument, but claims that *Rodriguez* is no longer valid on this point because in *People v. Johnson* (2016) 62 Cal.4th 600 (*Johnson*) our Supreme Court "held that a constitutional challenge to a special circumstance for a lack of 'narrowing' may be made in a LWOP case." *Johnson* held no such thing.

---

[4] Section 189 provides, in relevant part: "[M]urder that is perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person outside of the vehicle with the intent to inflict death, is murder of the first degree."

In *Johnson*, the jury convicted the defendant of lying-in-wait first-degree murder (§ 189, subd. (a)) and found true a lying-in-wait special circumstance (§ 190.2, subd. (a)(15)), and the defendant was sentenced to death. (*Id.* at p. 607.) In concluding that defendant's conviction did not violate the Eighth Amendment, the *Johnson* court discussed *People v. Superior Court* (*Bradway*) (2003) 105 Cal.App.4th 297 (*Bradway*), which held that the lying-in-wait special circumstance was not unconstitutionally vague. (*Johnson, supra*, 62 Cal.4th at p. 635; *Bradway, supra*, 105 Cal.App.4th at pp. 309–311.) *Johnson* included this footnote regarding *Bradway*:

"Because Bradway was sentenced to life without the possibility of parole, rather than death, his constitutional challenge to the lying-in-wait special circumstance arose as a void-for-vagueness claim under the due process clause. (*Bradway, supra*, 105 Cal.App.4th at p. 309.) However, his vagueness challenge echoed the 'specialized concept of vagueness most clearly defined by the [United States] Supreme Court in dealing with Eighth Amendment challenges to death penalties.' (*Bradway v. Cate* (9th Cir. 2009) 588 F.3d 990, 991.)" (*Johnson, supra*, 62 Cal.4th at p. 635, fn. 4.)

Thus *Johnson*—which was a death penalty case—did not hold that an Eighth Amendment narrowing claim can be brought where the defendant receives a sentence of life without possibility of parole, but rather that such a claim takes the form of a void-for-vagueness claim under the due process clause. (See *Bradway v. Cate, supra*, 588 F.3d at p. 991 ["Bradway recognizes that he lacks standing for an Eighth Amendment death penalty challenge because he was not sentenced to death, see *Houston v. Roe* [(9th Cir. 1999)] 177 F.3d 901, 907–908, so he presents his rather specialized vagueness challenge to California's special circumstance under the Due Process Clause"].) But Jones has not asserted any void-for-vagueness claim under

7

the due process clause. Nor could he, because "[o]bjections to vagueness under the Due Process Clause rest on the lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk." (*Maynard v. Cartwright* (1988) 486 U.S. 356, 361; see also *Kolender v. Lawson* (1983) 461 U.S. 352, 357 [invalidating as vague a statute that did not "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement"].) And the "conduct to which [section 190.2, subdivision (a)(21)] applies is not in doubt." (*Rodriguez, supra*, 66 Cal.App.4th at p. 171.) In sum, Jones's argument that the special circumstance finding violates the Eighth Amendment fails.

## II. *The Trial Court Did Not Err in Failing to Instruct on Imperfect Self-Defense*

Jones next argues that the trial court erred in refusing his request that the jury be instructed on imperfect self-defense. Jones contends that the evidence supported such an instruction because he believed that Purvis was one of the men who stole his car on June 4, 2011, and because he believed Purvis was a member of the "Taliban gang," and thus that he "would have been afraid of further armed attack by Purvis, when he saw Purvis' car directly next to his."

"California law requires a trial court, sua sponte, to instruct fully on all lesser necessarily included offenses supported by the evidence," which, in a murder prosecution, includes "the obligation to instruct on every supportable theory of the lesser included offense of voluntary manslaughter, not merely the theory or theories which have the strongest evidentiary support, or on which the defendant has openly relied." (*People v. Breverman* (1998)

8

19 Cal.4th 142, 149.) However, " '[s]uch instructions are required only where there is "substantial evidence" from which a rational jury could conclude that the defendant committed the lesser offense, and that he is not guilty of the greater offense. [Citation.]' " (*People v. Williams* (2015) 61 Cal.4th 1244, 1263.) On appeal, we review de novo the trial court's decision not to give a particular instruction. (*People v. Manriquez* (2005) 37 Cal.4th 547, 581, 584.)

The requested jury instruction on imperfect self-defense—CALCRIM No. 571—provides that a killing that would otherwise be murder is reduced to voluntary manslaughter if the following elements are satisfied:

"1. The defendant actually believed that (he/she/ [or] someone else/<insert name of third party>) was in imminent danger of being killed or suffering great bodily injury;

"AND

"2. The defendant actually believed that the immediate use of deadly force was necessary to defend against the danger;

"BUT

"3. At least one of those beliefs was unreasonable.

"Belief in future harm is not sufficient, no matter how great or how likely the harm is believed to be."

In this case, there is no substantial evidence of either the first or second element. The only direct evidence of Jones's state of mind at the time of the shooting was his own testimony, and it was flatly inconsistent with self-defense, imperfect or otherwise. As noted, Jones testified that he let "Dollar" take his car for a test drive around the time of the shooting, and denied both having killed Purvis and having pulled the trigger of a gun on August 18, 2011. He also testified that he and Purvis "were never enemies," and denied believing that Purvis was responsible for his June 2011

9

carjacking.  Obviously, all of this is entirely inconsistent with Jones having killed Purvis in self-defense.

Even if the jury did not believe Jones's testimony, there is no other evidence that Jones believed that he was in imminent danger, and no evidence that Jones actually believed deadly force was necessary to defend against any such danger.  That Jones believed Purvis had stolen his car two months prior was manifestly insufficient, because the imminent threat permitting one to act in self-defense or imperfect self-defense must be " 'immediate and present. . . . [O]ne that, from appearances, must be instantly dealt with.' " (*People v. Aris* (1989) 215 Cal.App.3d 1178, 1187; accord, *In re Christian S.* (1994) 7 Cal.4th 768, 783.)  And even if Purvis was a member of a gang who normally carried a gun, there is no evidence that Jones had any knowledge of that fact, which would in any event have been insufficient to justify the instruction.  (See *People v. Manriquez, supra*, 37 Cal.4th at p. 582 [evidence that victim usually carried a gun did not support imperfect self-defense instruction where "the record contains no evidence that defendant possessed a similar knowledge or belief"].)  There was no error in declining to give the requested instruction on imperfect self-defense.

## III.   *The Trial Court Did Not Err in Admitting Certain Firearms Evidence*

Jones next argues that it was error to admit certain firearms evidence, invoking the rule that "it is generally error to admit evidence that the defendant possessed a weapon that could not have been the one used in the charged crime." (*People v. Sanchez* (2019) 7 Cal.5th 14, 55.)  The reason is that "such evidence proves only that the defendant is in the habit of possessing a deadly weapon and is not probative on the issue of whether he

10

had possessed the particular weapon involved." (*People v. Gunder* (2007) 151 Cal.App.4th 412, 416; see *People v. Riser* (1956) 47 Cal.2d 566, 577 ["When the prosecution relies, however, on a specific type of weapon, it is error to admit evidence that other weapons were found in his possession, for such evidence tends to show, not that he committed the crime, but only that he is the sort of person who carries deadly weapons"].)

As to the particular evidence here, Doretha Smith, with whom Jones lived for about a month around May of 2011, testified that Jones requested that she assist him in obtaining a 9-millimeter firearm around that time, and that she did so.[5] Smith went on to testify that in late June 2011, Jones asked her via text message to purchase a .45-caliber handgun for him, but that she did not respond to that request.

Jones also argues that it was error to admit People's Exhibits 223 and 224, which were internet searches extracted from his cell phone and dated August 16, 2011, for various handguns, including a "Glock"-style handgun. Finally, Jones contends that it was error to admit People's Exhibit 259, which

---

[5] "Q Okay. With that in mind, was there an occasion earlier in 2011 when the Defendant asked you for assistance in purchasing a firearm?
"A Yes.
"Q Can you tell us what type of firearm it was?
"A It was a 9-millimeter.
"Q During that time, did you know someone that you could buy an illegal firearm from?
"A Yes.
"Q  Did you, in fact, assist Mr. Jones to acquire that illegal 9-millimeter firearm?
"A Yes.
"Q Why? And I'm asking for your reason.
"A Well, because it was also to be for security for the home, so I went ahead and helped purchase it."

11

he characterizes as "a photograph found in [his] cell phone of an HTC brand handgun."

To begin with, these objections are forfeited because Jones did not raise them before the trial court. (See Evid. Code, § 353, subd. (a) [reversal for erroneous admission of evidence precluded unless "[t]here appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated to make clear the specific ground of the objection or motion"]; *People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6.) Jones's counsel objected to the admission of this evidence on the grounds that its probative value was outweighed by prejudice, and lack of foundation, but did not raise the argument he now asserts on appeal. However, because Jones also argues that his counsel was ineffective in failing to raise this objection, we will consider the merits.

With respect to the testimony of Smith and the searches for handguns from Jones's cell phone, the rule of *People v. Riser*, *supra*, 47 Cal.2d 566, does not apply, because this evidence clearly had probative value apart from showing that Jones was the "sort of person who carries deadly weapons." (*Id*. at p. 577.) Given that the murder in this case was committed on August 18, 2011 with a .45-caliber handgun, evidence showing that Jones asked Smith in late June to purchase him just such a handgun was plainly relevant, and evidence of Smith's previous purchase of a different handgun for Jones was relevant to explaining that request. And evidence that Jones was searching for various handguns on his phone two days before the murder was relevant to suggest that he ultimately obtained a gun and committed the murder, even if some of the guns searched for were ultimately not the murder weapon. In short, the rule of *Riser* does not apply here, because the evidence was probative of whether Jones ultimately possessed the murder weapon.

12

Accordingly, there was no error in admitting it. (See *People v. Gunder*, *supra*, 151 Cal.App.4th at p. 417 ["the extent to which evidence demonstrates criminal propensity is simply a factor to consider in assessing the prejudice from its admission; it is not a basis for exclusion unless the evidence otherwise lacks any probative value"].)

With respect to People's Exhibit 259, Jones's argument appears to misrepresent the record. Inspector Matthew Broad, who performed a data extraction on Jones's HTC brand cell phone, testified as follows regarding People's Exhibit 259:

"Q Okay. All right. So let's, then, focus on the image, on these five, that you did find metadata on, you said it was People's 211. Did you then create a one-page report for that particular image, including the metadata information you found?

"A I did.

"Q I'm handing you what has been marked as People's Exhibit 259. Is this the one-page report containing the image and the metadata information?

"A Yes.

"Q Now, can you explain a little bit about what we see when we're looking at People's 259?

"A So the top image is a thumbnail of the original image that is placed there for our benefit. Then below that, you see the file name, which was the name given to the image by the forensic software as it was being recovered, so it was a recovered image. It didn't have a file name anymore. And then below is a bookmark comment, which includes text that I basically copied out and pasted in to be viewed. And this is the beginning of the file, so, for instance, the first—you just lost it."

According to Menlo Park Officer David Apple, People's Exhibit 211, the "original image" included in People's Exhibit 259 in thumbnail form, depicted Jones holding a firearm which was similar to the murder weapon. Jones's argument that the trial court erred in admitting People's Exhibit 259 because it depicted Jones holding an "HTC brand handgun" that "could not have been used in the charged crime" does not accurately describe that exhibit.

## IV. *The Trial Court Did Not Err in Preventing Defense Counsel from Asking Tatiana Harmon if Purvis Shot Her Brother*

Jones's next argument is that the trial court erred in prohibiting his counsel from asking Tatiana Harmon—Purvis's girlfriend, and the mother of his child—whether Purvis had previously shot her brother. This is the background:

Outside the presence of the jury, defense counsel explained to the trial court: "I also indicated that given [Harmon's] testimony, that she has indicated to the police that Man Man, on a prior occasion, had shot her brother, and I wanted to inquire as to that of the witness with respect to that line of questioning with regard to her testimony, and [the prosecutor] objected. Those would be my requests." The trial court refused this request as "not relevant to the issues currently before the Court."

Jones argues that this testimony was relevant because it showed that "Purvis was a member of the firearms-wielding Taliban gang," that members of that gang "often fired handguns at other persons in the East Palo Alto area," and that Purvis "was the kind of person who would inform on his friends to the FBI," and "was the type of untrustworthy person who would endanger his fellow-Taliban gang members by talking to the FBI about them."

14

This claim fails, first, because Jones failed to make an offer of proof as to Harmon's testimony.  (See Evid. Code, § 354, subd. (a) [reversal based on exclusion of evidence requires that "[t]he substance, purpose, and relevance of the excluded evidence was made known to the court by the questions asked, an offer of proof, or by any other means"].)  Jones concedes he made no such offer, but contends that one was not required because Harmon was a prosecution witness, and "[t]he evidence was sought by questions asked during cross-examination."  (*Id*., subd. (c).)  However, "[t]his exception applies only to questions within the scope of the direct examination."  (*People v. Hardy* (2018) 5 Cal.5th 56, 103.)  On direct examination, Harmon testified regarding two conversations she had with Kimberly Brown regarding Purvis's death, and an incident in which Purvis shot her brother was outside the scope of that direct examination, as Jones appears to concede on reply.

In addition, any error in excluding this evidence was harmless because it is not reasonably probable that a more favorable result would have been reached absent the alleged error.  (See *People v. Watson* (1956) 46 Cal.2d 818, 837.)  Jones contends that the fact that Purvis shot Harmon's brother showed that Purvis was "violent and untrustworthy," and thus "supported Ard's explanation of his motive for killing Purvis," that is, that Ard shot Purvis to punish him for informing on the Taliban gang to the FBI.  But the evidence at trial already showed that Purvis was associated with the Taliban gang and suggested that he had committed an armed carjacking of Jones, with the prosecutor's opening statement acknowledging that Purvis "was no angel" and was "associated with members of a criminal street gang known as the Taliban."  Evidence of a further incident in which Purvis shot his girlfriend's brother—even had it been included in what was a eight-day trial featuring the testimony of dozens of witnesses—would have been cumulative to this

15

evidence and would not have created a reasonable probability of a more favorable result.[6]

## V.   *There Was No Cumulative Error*

Jones's final argument is that the cumulative effect of the errors he alleges require reversal.  Since we have found no prejudicial error in any respect, this argument fails.  (*People v. Coryell* (2003) 110 Cal.App.4th 1299, 1309.)

## DISPOSITION

The judgment is affirmed.

---

[6] For the same reason, we reject Jones's argument that this limitation on his cross-examination of Harmon was a violation of his rights under the confrontation clause.  (See *People v. Linton* (2013) 56 Cal.4th 1146, 1188 ["However, not every restriction on a defendant's desired method of cross-examination is a constitutional violation. Within the confines of the confrontation clause, the trial court retains wide latitude in restricting cross-examination that is repetitive, prejudicial, confusing of the issues, or of marginal relevance"].)

_____
Richman, Acting P.J.

We concur:


_____
Stewart, J.


_____
Miller, J.

*People v. Jones* (A155649)

17